**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Eugene J. THOMAS, Defendant and Appellant.**

**No. 14852.**

Supreme Court of South Dakota.

Argued Oct. 22, 1985.

Decided Jan. 22, 1986.

Mark A. Moreno, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Richard Braithwaite, Braithwaite Law Offices, Sioux Falls, for defendant and appellant.

HERTZ, Acting Justice.

This is a criminal appeal from a judgment and sentence in Beadle County, entered on a jury verdict, which found the appellant guilty of rape in the third degree and sentenced him to serve a term of ten years in the South Dakota State Penitentiary. We affirm.

On July 31, 1984, Eugene J. Thomas, (Thomas), was charged with three counts of rape pursuant to SDCL 22–22–1(5). The information charged him with raping his step-daughter on three separate occasions in the family home in Huron, South Dakota. Each alleged incident comprised a separate count. Thomas was convicted on Count I but he was found not guilty on Counts II and III.

The first incident and the one upon which Thomas was convicted occurred in mid-June of 1982. The circumstances surrounding this incident included not only the defendant and his step-daughter, Phyllis Thomas, (Phyllis), but also Phyllis' friend Toni Severson, (Toni), who was residing with the Thomas family at the time.

Phyllis had experienced problems with her parents for many years and had been involved with the juvenile court since she was 11 years of age. Thomas and his wife Vicki Thomas, (Vicki), who is Phyllis' natural mother, voluntarily terminated their parental rights over Phyllis in 1983 due to their inability to cope with her violent temper and attempts to run away from home. Toni Severson moved into the Thomas home at the end of May 1982. She had experienced similar trouble with her parents and had spent the previous year living in foster homes.

Thomas, Phyllis and Toni were together in the living room of the Thomas residence on the morning of the first incident. At that time, Phyllis was 13 years of age and Toni was 17 years of age. Vicki Thomas was in the hospital during this period. Thomas and Vicki were divorced at the time of trial.

Based on Phyllis' testimony the June 1982 incident was reconstructed as follows. Thomas, Phyllis and Toni were watching television. Thomas and Toni were seated together on the south couch and Phyllis was seated on the east couch. Sometime around 10:30 a.m., Toni began making sexual advances toward the appellant which culminated in Thomas putting his finger in Toni's vagina. Phyllis remained in the room and acted as lookout while this activity took place. Thereafter, Phyllis went into the kitchen to fix lunch. Shortly after the parties had eaten their meal, they were all once again seated in the living room watching television. Similar to Toni's conduct that morning, Phyllis began making sexual advances toward Thomas. According to her testimony, Thomas responded by fingering Phyllis in an identical manner. Later on that same afternoon, Toni again initiated sexual acts with the appellant. This time, however, their activity commenced with digital penetration and concluded with Toni and Thomas having sexual intercourse in his bedroom. Again, Phyllis served as the lookout.

The second and third rape incidents purportedly occurred in June and July of 1983,

respectively. Similar to the first one, these subsequent incidents also involved the appellant's alleged acts of digital penetration upon Phyllis. In each incident, Phyllis either initiated or acquiesced to Thomas' sexual advances.

Over defense counsel's objection, Phyllis was permitted to testify that subsequent to the third rape incident in July of 1983, she and Thomas began having sexual intercourse. At trial, Thomas testified that none of the three incidents involving Phyllis ever took place because he was away from Huron on truck driving excursions at the time. Additionally, he denied ever having any kind of sexual contact with her whatsoever. Thomas admitted, however, to having sexual intercourse with Toni.

Toni testified in connection with the first rape incident that Thomas did not put his finger in Phyllis' vagina but only touched her breasts. She admitted, however, telling the prosecutor otherwise just two days earlier. Additionally, Toni acknowledged making sexual advances toward the defendant and having sexual intercourse with him.

The issues on appeal will be separately stated and so treated.

## I

### WHETHER EVIDENCE OF APPELLANT'S 'OTHER (SEXUAL) ACTS' WAS ADMISSIBLE?

Over defense counsel's objection, the trial court admitted evidence that placed the appellant in the family home on the day the first alleged rape took place. This evidence showed that Thomas and Toni Severson engaged in two separate sexual encounters while Phyllis was present or nearby. The digital rape of Phyllis allegedly occurred during the interval between Thomas and Toni's two sexual encounters. Thus, there can be no dispute that this evidence was relevant because it tended to connect Thomas with the commission of the first rape.

A trial court has within its power the ability to admit evidence of other crimes, wrongs, or acts, so long as the evidence is relevant. *State v. Means,* 363 N.W.2d 565, 568 (S.D.1985). Any fact that tends to connect an accused with the commission of a crime is relevant and has probative value. *State v. Johnson,* 316 N.W.2d 652, 654 (S.D.1982). If the trial court determines that the evidence is relevant, it must then decide whether the probative value of the evidence substantially outweighs its prejudicial effect in compliance with SDCL 19–12–3. If, although relevant, the court decides its admission will produce unfair prejudice to the defendant, it cannot be admitted. *State v. Means, supra.* The delicate balancing process is within the trial court's sound discretion. Our standard of review is whether the trial court has abused its discretion. *State v. Pedde,* 334 N.W.2d 41, 43 (S.D.1983).

Using the foregoing principles as guidelines, we initially examine whether the evidence at issue herein was admissible under the statutory exceptions codified in SDCL 19–12–5.

Generally, evidence of crimes or acts other than the ones with which a defendant is charged are inadmissible. The general rule and its exceptions are set forth in SDCL 19–12–5 which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Here, the trial court had the discretion to admit evidence of Thomas' sexual activity with Toni if the evidence fell within one of the enumerated exceptions and was not unduly prejudicial. Thomas argues that admission of the "other acts" evidence was not relevant to any of the foregoing statutory exceptions. Moreover, Thomas contends that this evidence unfairly prejudiced him in the eyes of the jury. He urges that any probative value gained from the evidence was far outweighed by its inflamma-

tory nature which served to characterize him as a "bad man", regardless of his guilt or innocence.

We disagree. Thomas put his identity in issue when he denied the charges, and tried to establish an alibi by stating that he was out of town on truck driving trips when the incidents occurred. Indeed, he denied ever having any sexual contact with Phyllis whatsoever. It follows, therefore, that the evidence served the purpose of proving the appellant's identity.

Our ruling herein is supported by substantial authority from other jurisdictions. Thus, in *Sanford v. State*, 76 Wis.2d 72, 250 N.W.2d 348 (1977), the defendant appealed his conviction for rape. The Wisconsin Supreme Court stated that since the defense here was alibi, the sole issue at the time of trial was identity, i.e., whether this defendant committed the rape against the complaining witness. In affirming the trial court, therefore, the court held that a prior act of sexual perversion against another person was admissible on the issue of identity only. Similarly, in *People v. Williams*, 115 Cal.App.3d 446, 171 Cal.Rptr. 401, 404 (1981), the defendant was convicted of numerous sexual and related crimes against four female victims. He denied committing any of the charged crimes. The trial court admitted evidence of two uncharged, but similar sexual offenses that the defendant allegedly committed five years earlier. In affirming the trial court, the court held that, "evidence of other sex offenses having distinctive, similar characteristics to those charged is generally admissible on the issue of defendant's identity if such offenses are not too remote in time, are sufficiently similar to the offense charged, and are committed upon persons similar to the prosecuting witness." Thereafter the court found that the similarities between the prior and charged offenses were striking, and thus, highly probative on the issue of defendant's identity.

The defendant in *State v. Freeman*, 303 N.C. 299, 278 S.E.2d 207, 209 (1981), appealed his conviction for first-degree rape, sexual offense and first-degree burglary. Not unlike Thomas in the instant action, the defendant in *Freeman* denied the charges, and tried to establish an alibi through several witnesses. The trial court admitted evidence of defendant's prior sexual misconduct with another person who testified at trial. In affirming the trial court's admission of this testimony as substantive evidence of defendant's guilt, the North Carolina Supreme Court stated that the defendant's identification was the principal issue, because although the complaining witness positively identified the defendant, his evidence of alibi made the question of whether defendant was, indeed, the perpetrator the "very heart of the case." *See also: People v. Sievers*, 56 Ill.App.3d 880, 14 Ill.Dec. 509, 511, 372 N.E.2d 705, 707 (1978) ["Since defendant's identity was in issue, evidence of other crimes—whose characteristics yielded a distinct and unique combination when considered together and viewed in *toto*—was properly introduced to establish this element."] *State v. Howard*, 57 Ohio App.2d 1, 385 N.E.2d 308, 313 (1978) ["Scheme, plan, or system evidence is admissible when the identity of the perpetrator of the crime is in issue."] *State v. Thompson*, 290 N.C. 431, 226 S.E.2d 487 (1976); *White v. State*, 533 S.W.2d 735 (Ct.Crim.Apps.Tenn.1975).

Furthermore, in *State v. Johnson, supra,* we wrote that the two principal factors bearing upon the admissibility of "other acts" evidence in regard to the identity issue, are the sequential relationship between the "other acts" and the offenses charged, and the modus operandi employed. Thus, we held that where incidents are closely related in time and similar in modus operandi, evidence of other crimes is frequently admissible on the question of defendant's identity. Here, evidence of Thomas' sexual exploits with Toni underscored the similarity between his alleged activity with Phyllis, and in doing so, corroborated her testimony by establishing a common plan or modus operandi.

Under the *Johnson* and *Williams* opinions, *supra,* Thomas' sexual conduct with Toni and his purported activity with Phyllis

were sequentially related, and shared the following: the "other acts" between Thomas and Toni occurred within several hours of Phyllis' first rape incident; both girls were "problem" teenagers; both girls lived with the appellant in a family setting and were under his supervision; all of the alleged encounters took place in the family home; both girls were present or nearby when the other one was violated; and finally, the appellant fingered Toni and Phyllis in a similar manner. Therefore, given that the incidents involving Thomas and the two girls were closely related in time and similar in modus operandi, evidence of Thomas' "other sexual acts" was admissible under the *Johnson* and *Williams* rulings when the appellant placed his identity in issue consonant with SDCL 19–12–5.

■ Closely related to the instant fact situation is our decision in *State v. Means*, *supra*, wherein the defendant was convicted of sexual contact with a child under the age of 15. On appeal, Means challenged the admissibility of the testimony of two girls, one of whom was the prosecutrix's sister, Marcie. Evidence showed that both girls had been similarly violated. In affirming the trial court's admission of the evidence, we found relevant the similarity between the prior acts with the two witnesses and the current crime charged. Furthermore, Marcie testified that Means touched her on the same automobile trip during which it was alleged that he touched the prosecutrix. Inasmuch as Marcie's testimony indicated an incident nearly contemporaneous with the crime charged, we held that the "other acts" evidence was admissible to show defendant's intent, motive, opportunity, state of mind, preparation, plan, knowledge, or absence of mistake as provided in SDCL 19–12–5.

Here, the evidence at issue concerned acts which occured on the same day in June of 1982. This tends to indicate that they were carried out nearly contemporaneous to the alleged rape of Phyllis. Furthermore, this evidence revealed a marked similarity between the appellant's prior digital penetration of Toni and his later conduct

with Phyllis. Not only did both incidents occur in the same room and within several hours of each other, but Thomas' use of a "walking" motion with his hands to get underneath each girls' underwear, as well as massaging and penetrating their vaginas with his finger, were also common features to both incidents. Thus, under the *Means* decision, *supra*, the "other acts" evidence was probative of Thomas' intent, motive, opportunity, and state of mind to satisfy his sexual urges with young girls and to show his unnatural preoccupation with such sexual acts.

■ The appellant's substantial reliance on this court's opinion in *State v. Houghton*, 272 N.W.2d 788 (S.D.1978), is considerably weakened by our decision in *State v. Willis*, 370 N.W.2d 193 (S.D.1985). In *Willis*, we wrote that the term "modus operandi" is included within the "plan" exception in SDCL 19–12–5. As such, we find that when the acts of digital penetration of both Phyllis and Toni are compared, a close parallel is established which indicates a common plan employed by the appellant. Thus, evidence reflecting these common features which illustrated Thomas' propensity toward sexual activity with young girls was admissible to show not only his identity, but also a plan or modus operandi.

Finally, the jury was given limiting instructions as to the proper use to be made of the evidence. Juries are presumed to follow instructions of the trial court. *State v. Reddington*, 80 S.D. 390, 125 N.W.2d 58 (1963). We hold, therefore, that the trial court did not abuse its discretion in admitting the evidence under SDCL 19–12–5, nor in finding it relevant, or in ruling that its probative value exceeded its prejudicial effect.

## II

WHETHER THE AFFIDAVIT OF VICKI THOMAS WHICH CONTAINED AN ALLEGED ADMISSION OF APPELLANT WAS ADMISSIBLE FOR IMPEACHMENT?

On November 9, 1983, Vicki Thomas executed an affidavit which contained the following statement, "I further state that my husband, Eugene Thomas, has told me that prior to May, 1983, he did, in fact, 'fool around' with Phyllis." State called Vicki during their case in chief and asked her whether or not she had ever had any conversation with the appellant, prior to executing the affidavit, in which he stated that he had fooled around with Phyllis. Vicki responded that they did in a conversation with the family psychologist. The prosecutor then asked Vicki if, as a result of those conversations, Thomas had said that he either fooled around or had sexual contact with Phyllis prior to May of 1983. Vicki replied in the negative. In light of the foregoing, the State sought, and was granted, admission of the affidavit into evidence over defense counsel's objection.

Thomas argues herein that it was error to admit the affidavit since it did not impeach Vicki's testimony, and because impeachment is not permitted on a collateral issue. We disagree.

■ In *State v. Gage*, 302 N.W.2d 793, 798 (S.D.1981), this court enunciated four requirements for consideration pursuant to the use of prior inconsistent statements for impeachment purposes, as provided in *United States v. Rogers*, 549 F.2d 490, 495 (8th Cir.1976). They are as follows:

1) Inconsistency: The statements must be inconsistent.

2) Relevancy: The inconsistency must relate to a matter of sufficient relevancy that the prosecution's case will be adversely affected if the inconsistent testimony is allowed to stand.

3) Compliance with SDCL 19–14–24 and 19–14–25: The prior statement must, on request, be shown or disclosed to opposing counsel, and if extrinsic evidence is to be used to prove the prior statement, the witness must be afforded an opportunity to explain or deny it, and the opposing party must have an opportunity to interrogate the witness about it.

4) Limiting instructions: The trial court must adequately instruct the jury about the limited purpose for which the prior inconsistent statement is admitted.

■ The record reflects that the requirements set forth in *Gage* were met in the case at bar. Vicki's testimony clearly contradicted her statements in the affidavit which were sworn and given under oath. Moreover, in the affidavit Vicki stated with particularity that Thomas told her that he had "fooled around" with Phyllis prior to May, 1983. At trial, however, she indicated otherwise. There can be little dispute that the two statements are inconsistent.

Nor can it be argued that the inconsistent statement was irrelevant. Count I of the information accused the appellant of raping his step-daughter in June of 1982. Vicki's statement related to the time period prior to May of 1983. Thomas was convicted upon Count I but not upon Counts II and III. It follows, therefore, that the State's case would have been adversely affected had Vicki's testimony been allowed to stand.

Similarly, both SDCL 19–14–24 and 19–14–25 were satisfied under the *Gage* rationale. In compliance with SDCL 19–14–24, the State disclosed Vicki's affidavit to defense counsel. Thus, Thomas' counsel was afforded the opportunity to examine Vicki about her statement in the affidavit. We note that SDCL 19–14–25 was inapplicable to the instant action because Vicki's prior statement was an admission by a party-opponent as defined in SDCL 19–16–3. Nevertheless, the record supports the fact that both Vicki and the appellant were given the opportunity to refute or explain the statement upon examination by defense counsel.

Finally, the trial court instructed the jury on impeachment by prior inconsistent statements via South Dakota Pattern Jury Instructions, (Criminal), 1–17–8. We find that this instruction adequately informed the jury as to the limited use to be made of Vicki's statement. Given the affidavit's highly prejudicial character, we conclude

that the requisite limiting instructions sufficiently protected Thomas' ability to obtain a fair trial.

Accordingly, in view of the application of *State v. Gage, supra,* to the case at bar, we hold that the trial court did not abuse its discretion in admitting Vicki Thomas' affidavit.

### III

#### WHETHER THE SOCIAL WORKER'S REPORT WHICH CONTAINED HER OPINION OF THE VICTIM'S VERACITY WAS ADMISSIBLE?

Karla Gnirk, (Gnirk), was a social worker for the South Dakota Department of Social Services. As such, she was a case supervisor for Phyllis. During the course of her testimony she identified a written report that she had prepared on June 19, 1981. A portion of that report dealt with Phyllis' storytelling and lying. The trial court refused to admit it on the grounds of relevancy. However, Gnirk was permitted to answer defense counsel's question as to whether she had made any notes in regard to Phyllis' lying. On appeal, Thomas argues that the report should have been admitted in reliance on SDCL 19-14-9, which provides that a witness' character for untruthfulness may be attacked by evidence in the form of either opinion or reputation.

■ Initially, we note that the trial court advised both counsel that the issue of Phyllis' credibility rested with the jury. We agree, and thereby find that Gnirk's report was properly excluded on the grounds of relevancy. Furthermore, the record reveals that defense counsel successfully admitted evidence of this type through other means. Thus, we find that admission of Gnirk's report would have been merely cumulative. We hold, therefore, that the trial court did not abuse its discretion.

### IV

#### WHETHER THE PSYCHOLOGIST'S OPINION TO THE AFFECT THAT APPELLANT HAD ADMITTED RAPING THE VICTIM WAS ADMISSIBLE?

Duane Majeres, a clinical psychologist, counseled the Thomas family pursuant to Phyllis' allegations that the appellant had raped her. Majeres testified that during their sessions, Thomas never verbally admitted fingering his step-daughter. However, Majeres sought to testify that it was his impression that the appellant made such an admission. A defense objection was sustained. Thereafter, the State asked Majeres if it was his opinion that Thomas had admitted it, and again a defense objection was sustained. The State then attempted to get Majeres' opinion into evidence by asking him if he would have continued counseling the family absent an admission. The trial court disallowed this testimony.

The State left this topic only to return to it a short time later during Majeres' examination. Thus, when the prosecutor resumed this line of questioning, he succeeded in admitting Majeres' opinion over defense counsel's objection.

On appeal, Thomas argues that the trial court erred by permitting Majeres to testify that in his opinion, the appellant had admitted raping Phyllis. We agree.

■ There can be no question that admissions against interest are competent evidence. *See:* SDCL 19-16-3. However, Majeres specifically testified that Thomas made no such admission. The trial court herein properly ruled on several occasions that Majeres was precluded from giving his impression or opinion that the appellant admitted the act. A reading of the transcript reveals that no new foundation was provided by the State to support the trial court's later ruling upon evidence which it had previously prohibited.

■ We hold that the trial court erred in admitting Majeres' opinion testimony. However, given the fact that the evidence against Thomas was substantial, we find that Majeres' testimony was merely cumulative to other properly admitted evidence. Accordingly, we conclude that admission of the opinion evidence was erroneous, but the error was not prejudicial to the appellant,

and therefore, harmless. *State v. Muetze,* 368 N.W.2d 575 (S.D.1985); *State v. Feyereisen,* 343 N.W.2d 384 (S.D.1984); *State v. Waller,* 338 N.W.2d 288 (S.D.1983); *State v. Dace,* 333 N.W.2d 812 (S.D.1983); *State v. White Mountain,* 332 N.W.2d 726, (S.D. 1983); *State v. Tribitt,* 327 N.W.2d 132 (S.D.1982); *State v. Wahle,* 298 N.W.2d 795 (S.D.1980); SDCL 23A–44–14.

### V

WHETHER THE VICTIM'S TESTIMONY WHICH ALLEGED SUBSEQUENT ACTS OF SEXUAL INTERCOURSE WITH APPELLANT WAS INADMISSIBLE DUE TO THE TRIAL COURT'S FAILURE TO PERFORM THE 'BALANCING TEST'?

On cross-examination, Thomas stated that he never had any form of sexual contact with Phyllis at anytime in his life or her life. Thereafter, Phyllis was permitted to testify that between August and November of 1983, she and Thomas had engaged in sexual intercourse approximately 15 to 20 times.

Thomas now argues that the trial court failed to perform the "balancing test" under SDCL 19–12–3. Defendant asserts that the rulings in *State v. Houghton, supra,* and *State v. Dace, supra,* are pertinent to this issue. In *Dace, supra,* the defendant was charged with raping a sixteen year old boy and the State sought to introduce evidence of other homosexual acts. We held that, "having determined that evidence of similar incidents had probative value, the trial court, in the exercise of sound discretion, was obliged to balance its probative value against the risk of unfair prejudice." Thomas argues, therefore, that the trial court's failure to use the "balancing test" to determine whether to admit this evidence under SDCL 19–12–5, was an abuse of discretion in view of its overwhelmingly prejudicial nature.

■ We agree with the trial court's ruling that Thomas' own testimony "opened the door" to the State's evidence. Thomas testified on direct and cross-examination

that he never at anytime had sexual contact with his step-daughter. This being so, the State's evidence was admissible to attack Thomas' credibility under SDCL 19–14–8. The balancing test pursuant to SDCL 19–12–3, under such circumstances is inapplicable. The State was entitled to impeach Thomas once he "opened the door." Thomas simply cannot make a sweeping denial of sexual contact with Phyllis, and then require the court to perform a balancing test before permitting the State to produce directly impeaching testimony. Therefore, his contention in this regard is totally without merit.

### VI

WHETHER THE PSYCHOLOGIST'S TESTIMONY WHICH CONCERNED ALLEGATIONS OF SEXUAL INTERCOURSE BETWEEN APPELLANT AND VICTIM WAS INADMISSIBLE HEARSAY?

Majeres was called as a rebuttal witness and asked by the prosecutor whether Phyllis had ever told him that she had sexual intercourse with Thomas. Defense counsel objected to the question, and claimed that it was a privileged communication under SDCL 19–13–7. Following an in-chambers hearing, the trial court over-ruled the objection. Thereafter, Majeres proceeded to testify that during an evaluative session in November of 1983, Phyllis told him that she had engaged in sexual intercourse with the defendant.

■ Although no objection was interposed at trial, Thomas argues that this testimony was inadmissible hearsay under SDCL 19–16–1(3). As such, he contends that its admission was plain error. The trial court ruled, and we affirmed, that Phyllis properly testified that she had sexual intercourse with the appellant. Thus, we find that Majeres' subsequent testimony was cumulative at best, and not prejudicial to Thomas. We hold, therefore, that the plain error doctrine is inappropriate under this factual situation because admis-

sion of this evidence did not substantially affect the appellant's rights.

We accordingly affirm the trial court.

MORGAN and WUEST, JJ., and DOB-BERPUHL, Circuit Judge, concur.

HENDERSON, concurs in result.

DOBBERPUHL, Circuit Judge, sitting for FOSHEIM, C.J., disqualified.