**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Mark O. CHRISTOPHERSON, Defendant and Appellant.**

**No. 17314.**

Supreme Court of South Dakota.

Resubmitted on Briefs Dec. 31, 1991.

Decided March 4, 1992.

Rehearing Denied April 13, 1992.

Mark Barnett, Atty. Gen., Frank Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Steven R. Binger, Sioux Falls, Philip G. Villaume, Bloomington, Minn., for defendant and appellant.

MILLER, Chief Justice.

### ACTION

Mark O. Christopherson appeals from his conviction for three counts of sexual contact with a minor. We affirm.

### FACTS

Christopherson, who had taught special education for approximately twenty years in and around Madison, South Dakota, was charged with five counts of sexual contact with a minor (SDCL 22–22–7) and one count of rape (SDCL 22–22–1(5)). The six counts against Christopherson arose solely out of his sexual contact with a fourteen year old boy (hereinafter called D.D.). Christopherson allegedly masturbated D.D. on five occasions while Christopherson was a guest at the home of D.D.'s parents. D.D. also alleged that Christopherson once performed oral sex on him.

The factual circumstances underlying each count are substantially similar. D.D. would sleep on the living room couch when Christopherson stayed overnight. Christopherson and his family would sleep upstairs in D.D.'s bedroom. Christopherson would come downstairs and talk to D.D. late in the evening. Christopherson would eventually take D.D's pants and underwear down to his ankles. Then, while watching the stairs to be sure not to get caught, Christopherson would masturbate D.D. Meanwhile, Christopherson's family and D.D.'s parents were sleeping upstairs.

Christopherson pled not guilty and asserted an alibi defense. He filed a motion to prevent State from using testimony of

five other adult males who also claimed Christopherson had sexual contact with them while they were minors. The trial court held an evidentiary hearing on the proposed bad act evidence and ruled that testimony from three of the witnesses was admissible, but excluded testimony from two other witnesses.

At trial, Christopherson proposed a jury instruction, which set forth the "reasonable doubt" standard and distinguished it from the "clear and convincing evidence" standard. The trial court rejected Christopherson's proposed jury instruction and gave the pattern jury instruction on "reasonable doubt."

The jury found Christopherson guilty of three counts of sexual contact. (He was found not guilty of two counts of sexual contact and not guilty of rape.) The trial judge sentenced Christopherson to five years in the penitentiary on each count, with the sentences to be served consecutively. Christopherson appeals, asserting that the trial court erred in admitting the prior bad act evidence and in refusing to give his proposed jury instruction.

## ANALYSIS

WHETHER ALLOWING THE ADMISSION OF BAD ACT EVIDENCE WAS AN ABUSE OF THE TRIAL COURT'S DISCRETION.

■ A trial court's decision to admit bad act evidence will not be overturned unless the trial judge abused his discretion. *State v. Chapin*, 460 N.W.2d 420, 421 (S.D.1990).

SDCL 19–12–5 provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ Trial courts must follow a two step process to decide whether bad act evidence is admissible. *State v. Champagne*, 422 N.W.2d 840, 842 (S.D.1988).

First, the trial court determines if the bad act evidence is relevant to the issues on trial. *Id.* Once relevancy has been established, the trial court must decide if the probative value of the evidence is substantially outweighed by its prejudicial effect. *State v. Basker*, 468 N.W.2d 413, 415 (S.D. 1991). The court must analyze the nature and facts of the prior bad acts to perform the balancing test. *Chapin*, 460 N.W.2d at 422; *State v. Titus*, 426 N.W.2d 578 (S.D. 1988). Similarly, it is important that evidence of the nature and facts of the prior bad acts goes before the jury so they know why the evidence is relevant and the purpose of its admission. *Chapin*, 460 N.W.2d at 422.

■ The trial court held an evidentiary hearing on Christopherson's motion to exclude evidence of prior bad acts. Three of the men testified concerning Christopherson's sexual contact with them. Statements were introduced from two other witnesses describing Christopherson's sexual contact with them. The three witnesses relevant to this appeal testified to the following facts at the evidentiary hearing and at trial.

D.W. testified that Christopherson had sexual contact with him when he was approximately 12 years old, in 1973. D.W. went camping with family and friends, including Christopherson. D.W. shared a tent with Christopherson. During the night, Christopherson got into D.W.'s sleeping bag and unzipped D.W.'s jeans. Christopherson fondled D.W.'s testicles and penis. Despite D.W.'s resistance, Christopherson continued masturbating D.W. for approximately 10 to 15 minutes. While this was going on, family and friends were sleeping nearby in tents and campers.

S.P. testified that Christopherson started a conversation with him at the local swimming pool in 1979. S.P. was about 15 years old at the time. Christopherson invited S.P. and his mother to visit his home to see his antiques. Christopherson developed a friendship with S.P. and his mother. At that point in his life, S.P. was considering becoming a minister or a counselor. Later in 1979, Christopherson told S.P. he was

taking some of his special education students on a camping trip. He invited S.P. to come along to help counsel the students. Christopherson said a female student had a crush on S.P. which needed to be confronted. Christopherson and S.P. went on this camping trip after getting permission from S.P.'s mother. S.P. discovered at the campsite that only he and Christopherson were on this camping trip. During the night, Christopherson placed his elbow on S.P.'s neck and held him down while he masturbated and performed oral sex on him. S.P. unsuccessfully resisted. After the sexual contact, Christopherson told S.P. that he was homosexual and wanted to come to Jesus. He asked S.P. to help him pray to God for forgiveness. He told S.P. to keep it a secret between them.

D.S. testified that he was a student in Christopherson's special education class for six years, from 1977 through 1983. The first sexual contact Christopherson had with D.S. was in 1977 when D.S. was about 14 years old. Christopherson told D.S. to try on some new gym shorts and then fondled him through the shorts. Over the six years, several times a week, Christopherson would tell the other special education students to go to study hall while he gave D.S. a "reading" lesson. Christopherson would lock the door and masturbate D.S. to ejaculation. Eventually, Christopherson performed oral sex on D.S. Christopherson told D.S. this activity was their secret. Still, D.S. told his parents and they contacted the principal. Christopherson told D.S. to recant his story and Christopherson could arrange to get him out of special education class. D.S. recanted his story.

The trial judge also heard evidence about Christopherson's sexual contact with two other boys; J.B. and J.T. The trial judge analyzed the evidence and determined that the evidence of Christopherson's contact with D.S., D.W. and S.P. was admissible, but that evidence concerning J.B. and J.T. was not admissible.

■ Asserting an alibi puts identity into issue. *See State v. Thomas*, 381 N.W.2d 232 (S.D.1986). In *Thomas*, we quoted approvingly from *People v. Williams*, 115 Cal.App.3d 446, 171 Cal.Rptr. 401 (1981), that "[e]vidence of other sex offenses having distinctive, similar characteristics to those charged is generally admissible on the issue of defendant's identity if such offenses are not too remote in time[,] are sufficiently similar to the offense charged, and are committed upon persons similar to the prosecuting witness." *Thomas*, 381 N.W.2d at 236 *citing Williams*, 115 Cal. App.3d at 452, 171 Cal.Rptr. at 404. *See also State v. Willis*, 370 N.W.2d 193 (S.D. 1985) (bad act evidence admitted to show common plan or scheme to compel sexual intercourse with retarded women that defendant had control over); *State v. Roden*, 380 N.W.2d 669 (S.D.1986) (common scheme of circumstances in a sexual abuse case showing pattern of satisfying sexual urges with children was admissible under the plan exception); and, *Espey v. State*, 407 So.2d 300 (Fla.Dist.Ct.App.1981) (bad act evidence admissible where evidence showed that defendant "committed at least a score more on five other young members of his family, in the same location, in the same manner continuously over an eighteen year period....")

The bad act testimony in this case was admissible to prove a plan or a common scheme to develop situations which allowed Christopherson to have sexual contact with young boys. First he would pick out an impressionable boy in his early teens. Christopherson always picked boys whose parents he knew or could get friendly with, making it more difficult for the boy to confide with his parents. Christopherson then used his role as an authority figure (teacher, supervisor or family friend) to work the boy into a situation where Christopherson was alone with him and able to have sexual contact. In each case Christopherson would tell the boy to keep it a secret. Christopherson would play off the desires or insecurities of the boy by promising a car, praying to God for forgiveness, or promising to get the boy out of special education. Christopherson never asked any of the boys to do anything to him.

Alternatively, the bad act evidence was admissible to prove intent. As we noted in *Basker*, the offense of sexual contact with a minor under SDCL 22–22–7 is a specific intent crime. In that case we affirmed the admission of bad act evidence to establish defendant's intent to arouse or produce sexual gratification. *Basker*, 468 N.W.2d at 416.

Christopherson's primary argument is that the prior bad acts were too remote in time to justify the prejudice of their admission. In *State v. Wedemann*, 339 N.W.2d 112 (S.D.1983), we chose not to set a rigid time limitation to determine whether prior bad acts are too remote. Instead, we noted that, "[w]hether prior acts are too remote must realistically depend on their nature." *Id.* at 115. *See also State v. Perkins*, 444 N.W.2d 34 (S.D.1989). Each case must be analyzed on its own because, as we noted in *Wedemann*, while a purse snatcher can repeat his crime often and almost immediately, an arsonist who burns his own property must limit the frequency of his fires. *Wedemann*, 339 N.W.2d at 115. Similarly, the nature of Christopherson's bad acts and the manner in which he operated, required his sexual misadventures to be spread out over time. He had to wait for a youth that appealed to him, develop a relationship with the boy and his parents, and use that relationship to get the boy in a position where he could force his sexual desires upon him. We applied a similar analysis in *State v. Means*, 363 N.W.2d 565 (S.D.1985), wherein we noted that "Means had to ... develop a relationship of trust with the families, and then wait for an opportunity to act." *Id.* at 569.

Our standard of review is whether the trial court abused its discretion in admitting the evidence. *State v. Dace*, 333 N.W.2d 812 (S.D.1983); *Wedemann*, 339 N.W.2d at 115. In that review "[w]e are bound by the rule that the question is 'not whether the judges of this court would have made an original like ruling, but rather whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion.'" *State v. Rose*, 324 N.W.2d 894, 895–96 (S.D.1982) *quoting F.M. Slagle & Co. v. Bushnell*, 70 S.D. 250, 16 N.W.2d 914, 916 (1944). After carefully reviewing the unique facts of this case we cannot say that the trial judge abused his discretion in admitting the prior bad act evidence.*

## WHETHER THE TRIAL COURT ERRED IN REFUSING TO GIVE A JURY INSTRUCTION REQUESTED BY CHRISTOPHERSON.

Christopherson asked the trial court to add a paragraph to the jury instruction relating to State's burden to prove guilt beyond a reasonable doubt. Christopherson wanted to add a paragraph that read:

In considering the standard of reasonable doubt consider that the lesser stan-

---

* Justice Sabers, in his dissent, asserts that this opinion conflicts with *State v. Caylor*, 434 N.W.2d 582 (S.D.1989), and creates "a double standard" for prosecution and defense.

We respectfully disagree. The rules of evidence contain separate rules for the admissibility of *prior convictions* for impeachment purposes and *prior bad acts* as exceptions under SDCL 19–12–5. In this case and *Caylor*, we have simply reviewed the trial court's application of those separate and distinct rules. We have not applied the rules differently for the prosecution or the defense.

*Caylor* involved an attempt to use a 15 year old conviction to *impeach the credibility of a witness*. Use of prior convictions to impeach witnesses is governed by SDCL 19–14–12 and 13. SDCL 19–14–13 specifically provides that "Evidence of a conviction under § 19–14–12 is not admissible if a period of more than ten years has elapsed since the date of the conviction . . .," unless the court determines that the probative value of the conviction substantially outweighs its prejudicial effect. As we stated in *Caylor*, a conviction is rendered inadmissable, as a matter of law, by the mere fact that the conviction is over ten years old, unless the trial judge determines otherwise. The standard is the same whether it is the prosecution or defense that is trying to use a prior conviction for impeachment of a witness.

This case is premised on SDCL 19–12–5, which allows evidence of prior bad acts (which need not be convictions) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Unlike SDCL 19–14–12, SDCL 19–12–5 does not state that bad acts of any specific age are presumed inadmissible. Admissibility is left to the discretion of the trial judge after performing the appropriate balancing test. The dissent notwithstanding, nothing in this opinion applies SDCL 19–12–5 differently for defense or prosecution.

dard of clear and convincing evidence is defined as follows:

> Its technical meaning has been expressed as the witnesses must be found to be credible, that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct and weighty and convincing as to enable either a judge or jury to come to a clear conviction without hesitancy, or the truth of the precise facts in issue.

The trial court refused to add that language and instead gave the standard criminal pattern jury instruction on reasonable doubt. The trial judge concluded that the addition of the above quoted language to the instruction would potentially confuse the jurors.

■ We have consistently held that jury instructions are sufficient where, as a whole, they correctly state the law. *See, e.g., State v. Martin*, 449 N.W.2d 29 (S.D. 1989). We have also approved of the use of the criminal pattern jury instructions. *See, e.g., State v. Andrews*, 393 N.W.2d 76 (S.D.1986).

Christopherson has not contended that the "reasonable doubt" jury instruction given by the judge was erroneous as to the law. He simply argues that the judge should have told the jury about the clear and convincing evidence standard. This was a criminal case and the reasonable doubt standard applied. Christopherson has not shown why it was important for the jury to understand the clear and convincing evidence standard. The trial court correctly concluded that an explanation of the clear and convincing evidence standard was unnecessary and might confuse the jury about which standard to apply. The trial court did not err in refusing to give the instruction requested by Christopherson.

## WHETHER THE PROSECUTOR PURSUED AN IMPROPER LINE OF QUESTIONING AND ARGUMENT.

■ Christopherson charges the prosecutor improperly questioned him about the truthfulness of the testimony of the witnesses against him. Christopherson did not object to this line of questioning at trial and therefore did not preserve the issue for appeal. *State v. Luna*, 378 N.W.2d 229, 235 (S.D.1985). Similarly, Christopherson did not object to the prosecutor's closing argument in which he discussed that line of questioning.

Christopherson claims the prosecutor's actions constituted plain error. We have reviewed the record and are not convinced that any "plain error" occurred to justify ignoring the failure to preserve the issue for appeal.

## WHETHER THE TRIAL COURT ERRED IN DENYING CHRISTOPHERSON'S MOTION FOR A PSYCHIATRIC EXAMINATION OF D.D.

■ Christopherson simultaneously filed nine separate pretrial motions. In one pretrial motion he requested an order directing D.D. to undergo a psychiatric examination. At the same time he filed a separate motion requesting access to D.D.'s juvenile record. The trial court reviewed D.D.'s juvenile record and then denied Christopherson access to it. The trial court noted that the motion to examine the juvenile record was predicated on use of the record in cross-examination of D.D. The trial court noted that only felony convictions could be used for that purpose. Christopherson's counsel agreed but also argued the information was necessary for Christopherson to make a showing to justify his motion for a psychiatric examination of D.D. State resisted Christopherson's efforts and described them as a "fishing expedition." The trial court had previously reviewed D.D.'s juvenile record and so denied the motion to examine it. The trial court specifically stated that after its review of the juvenile record: "The court does not find that there is any relevant information that could be gleaned."

On appeal, Christopherson asserts that the trial court erred in denying him an opportunity to review D.D.'s juvenile record. Christopherson argues that the trial court should have held an in camera examination of the juvenile record as set forth in *Pennsylvania v. Ritchie*, 480 U.S.

39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). From our review of the record it is clear that the trial court did perform a *"Ritchie"* type in camera review of D.D.'s juvenile record. After the motion hearing the trial court sent a letter to legal counsel explaining his decision on this issue. In that letter the trial judge briefly outlined the contents of D.D.'s juvenile record and concluded that: "the court does not believe these offenses are relevant to the current offense, nor are they relevant or admissible for impeachment purposes."

■ After denying Christopherson direct access to the juvenile record the trial court went on to consider Christopherson's motion for a psychiatric examination of D.D. Christopherson based this motion solely on the contents of D.D.'s juvenile record. Christopherson provided no other showing of need or justification. The trial court denied the motion for a psychiatric examination.

■ It is within the discretion of the trial court to order a psychiatric examination of the alleged victim in a sexual offense case. *State v. Blalack,* 434 N.W.2d 55 (S.D.1988); *State v. Reiman,* 284 N.W.2d 860 (S.D.1979). The situation is sensitive and the trial court should only order a psychiatric examination after a "substantial showing of need and justification." *Blalack,* 434 N.W.2d at 60. The trial court was aware of the contents of the juvenile record and still determined that Christopherson had not met his burden. The trial court did not abuse its discretion when it denied the motion for a psychiatric examination of D.D.

Affirmed.

WUEST, J., concurs.

HENDERSON, J., concurs specially.

SABERS and AMUNDSON, JJ., dissent.

HENDERSON, Justice (specially concurring).

One of the oldest maxims in the law is simply this: Like cases should be decided alike.

*State v. Werner,* 482 N.W.2d 286 (S.D. 1992) handed down by this Court on March 1992, is a "like case." In that case, I fully set forth my views, which are: (1) A criminal defendant is entitled to a jury trial (which is a great principle to observe and must be inflexible) but (2) The applicability of SDCL 19–12–5, this state's statute on the "bad acts" evidence rule, to have vitality, must have flexibility so that the statute may be applied to each set of facts. There are two weighty sentences in that statute and both must be given effect. As I wrote in *Klein,* cited in the majority opinion, "it is not a matter, in every case, of automatic inclusion or automatic exclusion."

It appears to me that Christopherson had a fair trial. Acting on the evidence before them, the jury found Christopherson not guilty of two counts of sexual contact and not guilty of rape. Yet, it found him guilty of three counts of sexual contact. Objectivity is one of the life lines of the law. This jury, sifting through the evidence and employing fairness, was able to reach separate decisions on separate counts. Their reasoning process is a tribute to the jury system. Observe, also, that the trial court did not automatically include or exclude all of the state's proffered evidence; rather, it excluded evidence of two witnesses and included testimony of three witnesses. In a sense, were not both sentences in the statute, being implemented? I think so. In applying this statute, we might very well have different perception. And perception does not, necessarily, beget perfection. This turn on words takes my thoughts to the trial judge who is held only to: Did he/she abuse his/her discretion? So there you have it, perception, perfection and discretion. And thereupon, mayhaps, the evidentiary war doth and will rage.

Here, Christopherson had the *opportunity* to commit these crimes, developed a relationship of trust with the families of the victims so he could take advantage of the young boys, and then concocted, which he implemented, a *plan.* He *prepared* his crimes. And he executed them. He gained the confidence of the victims and their families. In reading over his activities, over

the course of nearly two decades, it becomes obvious that he also created an opportunity to take advantage of these young males, isolating them, and using his position as a teacher, to implement his secretive intentions. There is a remarkable consistency in Christopherson's activities and mode of operation for approximately two decades. One last thought on the remoteness issue: Christopherson did not commit crimes obvious to the eye or to the public or to law enforcement. His entire plan and strategy was to prevent detection, to force himself upon these young males in clandestine encounters, all in an effort to secrete his misdeeds. Oh, is not the universal mother of law—the truth? And was it not uncovered here?

Judge Tucker did not abuse his discretion in permitting this evidence to be placed before the jury so it could ferret out the truth. *State v. Sieler,* 397 N.W.2d 89 (S.D. 1986) and *State v. Rose,* 324 N.W.2d 894 (S.D.1982).

SABERS, Justice (dissenting).

The danger of unfair prejudice so substantially outweighs the probative value of these prior bad acts that the defendant was denied the fair trial guaranteed by the United States and South Dakota Constitutions. Attempting to assess the impact of these prior bad acts on the jury is like speculating on the damage a bull might do in a china shop. The prior bad acts testimony in this case painted the defendant not only as a bad man but also as an evil and conniving man. Once a juror has heard such testimony, the defendant loses any chance of receiving a fair trial. "[T]here is no way that a criminal defendant can have a fair trial after this kind of evidence is admitted." J. Larson, South Dakota Evidence § 404.2[1], p. 154 (1991) (citing other authorities).

A defendant should be tried on the evidence of the crime charged, not on the evidence of all of the other uncharged acts in his life.

A man should not be convicted because he is a 'bad man'; or, that previously he acted as a 'bad man' in a given factual situation for, if convictions were secured in such fashion, the principle that a man may be punished only for those acts with which he was charged, would be violated.

*State v. Chief Eagle,* 377 N.W.2d 141, 147–8 (S.D.1985) (Henderson, J., dissenting). *See also Perkins,* 444 N.W.2d at 41 (Sabers, J. dissenting); and *Wedemann,* 339 N.W.2d at 116–117 (Henderson, J. dissenting).

For the state's attorney to offer, the trial court to admit and the majority to affirm defendant's conviction based on most of the exceptions in SDCL 19–12–5 is error. To admit testimony of these prior bad acts based on the pretext of showing "motive, opportunity, intent, preparation [and] plan" simply denies fair trials. In reality, none of these exceptions were material to the issue in this case. Defendant's defense was simply that he did not commit the acts charged. Motive was not a material issue. In fact, in this sex molestation case, motive is obvious, not material. No material issue existed as to "opportunity, preparation [and] plan" either. The same is true of intent. *See Champagne* 422 N.W.2d at 845–846 (Sabers, J., dissenting). The exceptions continue to swallow the rule. *Id.*

The South Dakota Legislature could, within constitutional limits, make all prior bad acts admissible in sex molestation cases. It could do so simply by enacting a law which states that all such evidence is admissible without regard to relevancy, materiality and prejudice. However, until the legislature does so, we should enforce the law and require the prosecutor to prove relevancy, materiality and that the prejudicial effect of such evidence does not substantially outweigh its probative value. *Id.*

Additionally, the majority's ruling completely fails to account for the relevant ten year time limit in SDCL 19–14–13.* As

---

\* SDCL 19–14–13 (609(b)) states in part:

Evidence of a conviction under § 19–14–12 is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the

indicated in the majority opinion, these un-charged prior bad acts occurred 17, 11 and 7 to 13 years prior to the time of this trial. In effect, their admission creates a double standard in South Dakota criminal law. One rule for the state, another rule for the defense. In *State v. Caylor*, 434 N.W.2d 582, 584 (S.D.1989), this court held under SDCL 19–14–13 that a "15 year old conviction [was] stale and inadmissible as a matter of law" and could not be used to impeach a state's witness. Here, we are not even dealing with a conviction. We are dealing with prior uncharged acts which simply tended to show that the defendant was a bad man. Therefore, these un-charged prior bad acts were *too* prejudicial and *too* remote and prevented the defendant from receiving a fair trial. *See State v. Rufener*, 392 N.W.2d 424, 434 (S.D.1986) (Sabers, J. dissenting).

This same issue arose recently in Florida in the William Kennedy Smith rape trial. Although three instances of alleged prior bad acts with other victims were tried *in* the press, they were excluded *from* the trial. But not in South Dakota. Here, our liberal and almost automatic admission of prior bad acts makes them the focal point of the trial. Justice is nowhere to be found.

If we fail to send this case back for a fair trial, the futility and expense of attempting to educate Judicial personnel on "prior bad acts" through our "Judicial Conference" will be a joke. The State was improperly permitted to put the "bad before the good."

If we fail to send this case back for a fair trial, our message to prosecutors is clear—open season stays open forever, keep winking at the rules.

We should reverse and remand for a fair trial.

AMUNDSON, J., joins this dissent.

probative value of the conviction supported by specific facts and circumstances substan-

tially outweighs its prejudicial effect[.]