#24949-a-SLZ

**2009 SD 87**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA                    Plaintiff and Appellee,

v.

JAMES BIG CROW,                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JEFF W. DAVIS
Judge

* * * *

MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                     Attorneys for plaintiff
                                         and appellee.


ELIZABETH LORINA of
Gonzalez Law Firm
Rapid City, South Dakota                 Attorneys for defendant
                                         and appellant.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 24, 2009

OPINION FILED **09/23/09**

#24949

ZINTER, Justice

[¶1.]     James Big Crow was charged with two counts of incestuous sexual

contact involving his niece.  After a hearing, the circuit court allowed admission of

acts of incestuous sexual contact involving two other nieces.  The court admitted the

other acts evidence to prove a common plan, design or scheme under SDCL 19-12-5

(Rule 404(b)).  The jury convicted and Big Crow appeals.

*Facts and Procedural History*

[¶2.]     Big Crow was charged with incestuous sexual contact with his niece,

D.P., in violation of SDCL 22-22-19.1 (2004).[1]  According to the State's evidence, the

abuse occurred when D.P. was approximately eight or nine years-old.  At that time,

D.P. was doing tasks for Big Crow in his home.  On the first occasion, D.P. was lying

on a couch watching a movie.  D.P testified that while she was watching the movie,

Big Crow came into the room naked and began playing a pornographic movie.  Big

Crow then called D.P.'s name.  She testified that she was uncomfortable because he

was naked, so she pretended to sleep.  Big Crow, however, continued to call D.P.'s

---

1.     The 2004 statute provided as follows:

> Any person, fourteen years of age or older, who knowingly
> engages in sexual contact with another person, other than that
> person's spouse, if the other person is under the age of twenty-
> one and is within the degree of consanguinity or affinity within
> which marriages are by the laws of this state declared void
> pursuant to § 25-1-6, is guilty of a Class 5 felony.
> Notwithstanding § 23A-42-2 a charge brought pursuant to this
> section may be commenced at any time prior to the time the
> victim becomes age twenty-five or within seven years of the
> commission of the crime, whichever is longer.

SDCL 22-22-19.1 (2004) (repealed by SD Sess. Laws 2005, ch 120, §
22).

name and she answered. Big Crow asked D.P. if she liked the pornographic movie, and she shrugged her shoulders. She then went to the bathroom to be by herself. While on her way to the bathroom, Big Crow asked her to go into the kitchen and get a tape measure so she could measure his penis. She obeyed. Big Crow then had D.P. touch his erect penis.

[¶3.]     D.P testified that about a week later, she was at Big Crow's house doing dishes when she laid down on the couch to watch television. Big Crow again came out naked and asked her to give him a "big hug," which she did. Big Crow then said he was going to take a shower. While in the bathroom, he told her to come in. D.P. went into the bathroom and Big Crow said: "Feel this. Feel this." Big Crow took her hand, placed it on his erect penis, and moved her hand back and forth. D.P. testified that the stroking lasted about thirty seconds until she pulled her hand away. Big Crow subsequently went to his room and began calling D.P.'s name again, telling her to come to his room. She complied and saw him lying on the bed naked. Big Crow asked for a hug, and D.P. hugged him for a short time until he grabbed her and sat her on top of him. She testified that she was wearing clothes, that she could tell his penis was erect, and that Big Crow began "moving up and down."

[¶4.]     At trial, Big Crow denied D.P.'s allegations. Rapid City Police Department Detective Steven Neavill had interviewed Big Crow. Neavill testified Big Crow admitted that on one occasion he was in his bed naked and he asked D.P. to give him a hug. Big Crow, however, claimed that he had covers on top of him, and he denied that he ever had D.P. touch his penis.

[¶5.]        Over Big Crow's objection, the State presented evidence from two other alleged victims.  M.H., another niece of Big Crow's, testified that when she was ten or eleven, she was asleep on the floor at her mother's home when Big Crow woke her and placed her hand on top of his pants and started rubbing her hand over his erect penis.  Big Crow denied M.H.'s accusations.

[¶6.]        The other alleged victim was B.M., Big Crow's great-niece.  B.M. testified that when she was fourteen, she was sleeping at her grandmother's home when she woke to find Big Crow feeling her between her legs on top of her clothes.  According to B.M., Big Crow also put her hand on his bare, erect penis.  Big Crow testified that he did not have his hand between her legs, but that he may have placed his hands on her chest or stomach.

[¶7.]        The circuit court allowed M.H.'s and B.M.'s testimony under SDCL 19-12-5 (Rule 404(b)), finding the evidence relevant and not substantially more prejudicial than probative.  With respect to relevance, the court found that Big Crow had a "scheme, intent, design, [ ] to single out young females for which he did exert some influence as their [respected] elder and family member.  So the type of the actions that were allegedly performed and the age range of the young ladies at the time involved are consistent with those sorts of patterns."  With respect to prejudice, the court found:  "This type of evidence is always prejudicial, there is no question about it.  That's why the balancing test is there to determine whether it's more probative to allow it in."  The court continued, "I do feel it meets the requirements . . . as to Mr. Big Crow's actions at the time in question."  We review these rulings under the abuse of discretion standard.  State v. Chernotik, 2003 SD

129, ¶28, 674 NW2d 264, 274. An abuse of discretion is "discretion exercised to an end or purpose not justified by and clearly against, reason and evidence." State v. Machmuller, 2001 SD 82, ¶9, 630 NW2d 495, 498.

*Decision*

[¶8.] The admission of other acts evidence is governed by SDCL 19-12-5 (Rule 404(b)), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In interpreting the "plan" exception in the statute, this Court has followed those authorities allowing other acts not only where the charged and uncharged acts are part of a single, continuing conception or plot, but also where the uncharged misconduct is sufficiently similar to support the inference that they are manifestations of a *common* plan, design or scheme to sexually abuse different victims. *See* State v. Ondricek, 535 NW2d 872, 875 (SD 1995) (citing State v. Champagne, 422 NW2d 840, 842 (SD 1988)). A "'common plan, design or scheme' refers to a larger continuing plan, scheme or conspiracy of which the present crime charged at trial is only a part[.]" *Id.* (quoting *Champagne,* 422 NW2d at 842). Although we acknowledged that "'common plan, design or scheme' . . . is often relevant to show motive, intent, knowledge or identity," we also acknowledged "[b]y showing that the earlier schemes bore a singular strong resemblance to the pattern of the offense charged, the government establishes a preexisting plan or design

which, in turn, tends to show the doing of the act designed." *Id.* (citing United States v. Weidman, 572 F2d 1199, 1202-03 (7thCir 1978)).

[¶9.] Application of the broader "common" plan exception is well recognized in sex abuse cases. In *People v. Ewoldt,* 7 Cal4th 380, 393-94, 867 P2d 757, 776 (1994)*,* the California Supreme Court considered conflicting authorities before rejecting the view that the "plan" exception is limited to a single, continuing conception or plot. Instead, California followed those authorities holding that evidence of a defendant's "uncharged misconduct is relevant where the uncharged misconduct and the charged offense are sufficiently similar to support the inference that they are *manifestations* of a *common* design or plan." *Id.* at 401-02, 867 P2d at 776 (emphasis added). *Ewoldt* noted:

> "The presence of a design or plan to do or not to do a given act has probative value to show that the act was in fact done or not done." (1A Wigmore, Evidence (Tillers rev ed 1983) § 102, p1666). . . . The existence of such a design or plan also may be proved circumstantially by evidence that the defendant has performed acts having "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." (2 Wigmore, Evidence (Chadbourn rev. ed. 1979) § 304, p249, italics omitted.)

*Id.* at 393-94, 867 P2d at 764 (citations omitted). Consequently, "evidence that the defendant has committed uncharged criminal acts that are similar to the charged offense may be relevant if these acts demonstrate circumstantially that the defendant committed the charged offense pursuant to the same design or plan he or she used in committing the uncharged acts." *Id.* at 403, 867 P2d at 770. *Ewoldt* concluded that similar acts of uncharged abuse of a stepdaughter were admissible

to prove the charged act of abuse of another stepdaughter. The California Supreme Court reasoned:

> [E]vidence of defendant's uncharged misconduct shares sufficient common features with the charged offenses to support the inference that both the uncharged misconduct and the charged offenses are manifestations of a common design or plan. Such evidence is relevant to establish that defendant committed the charged offenses in accordance with that plan.

*Id*. at 403, 867 P2d at 771.

[¶10.] We adopted the *Ewoldt* reasoning in *State v. Wright*, noting, "[u]nlike evidence of uncharged acts used to prove identity, the plan need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense." 1999 SD 50, ¶18, 593 NW2d 792, 800 (quoting *Ewoldt*, 7 Cal4th at 403, 867 P2d at 770). Therefore, "[a] plan or design can be shown circumstantially with evidence that the defendant committed a series of similar but 'unconnected' acts." *Id.* ¶19, 593 NW2d at 801 (quoting *Ewoldt,* 7 Cal4th at 400, 867 P2d at 768-69).

[¶11.] Big Crow, however, argues that "the similarities among [the charged and uncharged acts] are much more shallow than in other cases where [this] Court has upheld the relevancy of 404(b) witness testimony," and that Big Crow's "abusive interactions were fundamentally different." (Appellant's Br 8, 10) Therefore, he argues that the evidence of the prior alleged incestuous sexual contact with other nieces was both irrelevant and more prejudicial than probative. We disagree.

[¶12.] This Court has found similar other acts evidence admissible in *Ondricek, supra, State v. Christopherson,* 482 NW2d 298 (SD 1992), and *State v. Perkins,* 444 NW2d 34 (SD 1989). In *Ondricek*, the defendant was charged with

having sexual contact with his niece, E.P. E.P. testified that when she was six years-old, she stayed with Ondricek and his wife, and that Ondricek inserted his penis into her mouth after telling her a bedtime story. When E.P. was eight or nine years-old, Ondricek removed E.P.'s clothes when he took her swimming and then proceeded to rub her chest with his hands. E.P. finally recalled a third incident when, after a fishing or swimming excursion, Ondricek opened her legs and rubbed her vagina.

[¶13.]     That circuit court admitted evidence of acts of sexual contact and rape with other nieces (D.P. and L.P), which had occurred approximately twenty years earlier. D.P. testified that when she was six, Ondricek had asked her to go "skinny dipping" but that she felt uncomfortable after she had removed most of her clothing. She also testified that Ondricek massaged her around her sides and below her waist at a family gathering. Finally, when D.P. was twelve, she stayed overnight with Ondricek and his wife in a tent. On this occasion Ondricek fondled her breasts. L.P. testified that Ondricek took her skinny dipping when she was four. He made her touch his penis and attempted to sexually penetrate her. He also rubbed her vagina on another occasion when she fell off a sled and hurt her groin area. She finally testified that he had raped her when she was eight, and two years later he rubbed her breasts and placed her hand on his penis. This Court held that these other acts with other nieces, occurring in different places under different circumstances, were sufficiently similar to prove a common plan or scheme. *Ondricek*, 535 NW2d at 876-77.

[¶14.]     In *Christopherson,* 482 NW2d at 299, the defendant was charged with sexual contact with a minor. According to the fourteen-year-old victim, Christopherson masturbated D.D. on five occasions while Christopherson was a guest in the home of D.D.'s parents. D.D. also alleged that Christopherson once performed oral sex on D.D. The circuit court admitted testimony of three other adult males who claimed Christopherson had sexual contact with them while they were minors. One of these witnesses testified that Christopherson molested him while they were on a camping trip with family and friends. Another stated that Christopherson initiated sexual contact with him during a camping trip. The third indicated he was Christopherson's student at school and that Christopherson repeatedly molested him when other students were out of the room. We affirmed the admission of the other acts testimony, finding the evidence was sufficiently similar to prove a plan or common scheme. *Id.* at 301. We explained:

> The bad act testimony in this case was admissible to prove a plan or a common scheme to develop situations which allowed Christopherson to have sexual contact with young boys. First he would pick out an impressionable boy in his early teens. Christopherson always picked boys whose parents he knew or could get friendly with, making it more difficult for the boy to confide with his parents. Christopherson then used his role as an authority figure (teacher, supervisor or family friend) to work the boy into a situation where Christopherson was alone with him and able to have sexual contact.

*Id.*

[¶15.]     In *Perkins*, 444 NW2d at 36, the defendant was charged with three counts of second-degree rape stemming from three incidents of sexual contact with a female minor, D.J.K. All three incidents occurred when D.J.K. was babysitting or visiting in Perkins' home. The circuit court admitted testimony of two other girls

indicating that Perkins had initiated sexual contact with them when they were babysitting his children or otherwise visiting his home. We concluded that "[t]he challenged testimony demonstrat[ed] a consistent pattern of molesting young girls with whom Perkins was long acquainted, when they were within his home." *Id.* at 38. *See also* State v. Roden*, 380 NW2d 669, 670-71 (SD 1986) (holding other acts testimony showed a *common scheme,* where defendant's stepdaughter testified to incidents of sexual contact which paralleled the complaint made by the present victim).

[¶16.]    Under these authorities, Big Crow's other acts evidence was relevant to prove that Big Crow had a common plan, design and scheme to coerce incestuous sexual contact with all three victims. Big Crow's other acts tended to prove a common plan and design to use his status as a family authority figure, when alone with young nieces who were sleeping or resting in familial homes, to force them to fondle his erect penis.

[¶17.]    Big Crow, however, argues that identity "was never at issue," and therefore any evidence regarding alleged similarities between the charged offense and other offenses was more prejudicial than probative. (Appellant's Br 13). This argument is misplaced. The plain text of Rule 404(b) makes no such distinction between identity, plan and the other exceptions. Further, as the California Supreme Court explained in this situation involving sex abuse, the other acts evidence is admitted to prove a common plan or design *rather than* identity. Where the "various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations, . . . [e]vidence of a common design or plan,

therefore, is not [necessarily] used to prove the defendant's intent or identity but rather to prove that the defendant engaged in the conduct alleged to constitute the charged offense." *Ewoldt*, 7 Cal4th at 393-94, 867 P2d at 764 (citations omitted). *See also Wright*, 1999 SD 50, ¶19, 593 NW2d at 800-01 (noting that other acts evidence is admissible for both purposes, the difference being that more similarity is required when the evidence is offered to prove identity than when it is offered to prove a common plan or design).

[¶18.]        Big Crow further argues that because of the remoteness of the other acts, their admission was irrelevant and more prejudicial than probative. He notes that the abuse involving all three victims allegedly occurred in the 1980's, 1995, and 2001. We have, however, explained why lengthy timeframes of abuse are permitted in child sex abuse cases:

> [W]e have chosen not to set a rigid time limitation when determining whether bad acts are too remote. "Whether prior acts are too remote must realistically depend on their nature." This case involves allegations of sexual abuse of young children who were members of the defendant's family. Taking into account the shame and fear often experienced by victims of abuse and the fact that victims of molestation are children, lengthy delays in reporting abuse, much less testifying to it in open court, are not surprising. The record indicates Ondricek's status as a family member further compounded his victims' reluctance to come forward; they feared any disclosures would be disbelieved or would destroy family ties. Additionally, Ondricek had to create opportunities during which he could abuse his victims. . . . Consequently, the nature of Ondricek's acts, and the manner in which he operated, required his sexual improprieties be spread out over time.

*Ondricek*, 535 NW2d at 877 (citations omitted). *See also* State v. Werner, 482 NW2d 286, 289-90 (SD 1992) (concluding that where a pastor was accused of sexual contact with five female minors from October 1987 to March 1990, the trial court

properly admitted testimony indicating that the pastor had sexual contact with young women of his parish from 1962 to 1990); *Christopherson,* 482 NW2d at 302 (concluding that testimony regarding sexual contact, which occurred up to seventeen years before trial, was not too remote).

[¶19.] The circuit court observed that pursuant to South Dakota caselaw, there is no rigid timeline rule. *Ondricek*, *Werner*, and *Christopherson* all support this view. Therefore, the years between these other acts were not too remote. We conclude that the circuit court did not abuse its discretion in finding the other acts evidence was relevant and that its prejudicial effect did not substantially outweigh the evidence's probative value. [2]

[¶20.] Big Crow finally appeals the State's subpoena of M.H., a tribal member residing within an Indian reservation. Because Big Crow acknowledges that he did not raise this issue, make an objection, or move to quash the subpoena at trial, he has waived this issue on appeal. State v. Boston, 2003 SD 71, ¶26, 665 NW2d 100, 109.

[¶21.] Affirmed.

[¶22.] GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and SEVERSON, Justices, concur.

---

2. Big Crow also argues that the circuit court abused its discretion in failing to give a jury instruction advising the jury that it could not consider Big Crow's other acts unless it first determined that Big Crow committed the other acts by a preponderance of the evidence. Big Crow, however, failed to propose a jury instruction on this issue, and the issue is waived. *See* State v. Talarico, 2003 SD 41, ¶33, 661 NW2d 11, 23 ("Failure to object to the jury instruction or propose an alternative instruction waives the issue for appeal.").