**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Myron J. ONDRICEK, Defendant and Appellant.**

**No. 18788.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 11, 1995.

Reassigned May 26, 1995.

Decided Aug. 2, 1995.

Mark Barnett, Atty. Gen., Scott Bogue, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Ron J. Volesky, Huron, for defendant and appellant.

MILLER, Chief Justice (on reassignment).

Myron J. Ondricek was charged with three counts of sexual contact and one count of rape. He was convicted on one count of sexual contact with a minor—his niece. The trial court allowed the State, in its case-in-chief, to present evidence of prior bad acts of sexual contact and rape with other nieces, which acts occurred approximately twenty years earlier. We affirm.

## FACTS

The prosecutor filed a motion to introduce prior bad acts testimony from D.P. and L.P., two of Ondricek's nieces. D.P. testified that when she was six (around 1972) Ondricek had asked her to go skinny dipping but that she felt uncomfortable after she stripped to her panties. At family gatherings, she recalled that Ondricek massaged her around her sides and below her waist, making her very uncomfortable. When D.P. was twelve (around 1978) she stayed overnight with Ondricek and his wife in a tent. He fondled her breasts until she moved over to the other side of the tent.

L.P. testified that Ondricek took her "skinny dipping" when she was four. He made her touch his penis and attempted to sexually penetrate her. He rubbed her vagina on another occasion when she fell off a sled and hurt her groin area. She testified that he raped her in 1974, when she was eight, while taking her fishing and later, in 1976, he rubbed her breasts and placed her hand on his penis.

Ondricek moved to suppress this testimony. After a pretrial hearing, the trial court held the testimony admissible. The court concluded that the prior bad acts, if believed by the jury, would establish "a plan or common scheme on the part of defendant to develop situations which would allow him to have sexual contact with his nieces and to prove the intent required for the offense of sexual contact with a minor." The court also concluded that the probative value was not substantially outweighed by its prejudicial effect. The trial court instructed the jury that the other acts evidence could only be used as proof of intent or common scheme.

The jury returned verdicts of not guilty on all counts except Count 2, sexual contact with E.P., a child under sixteen. Ondricek was sentenced to ten years in the South Dakota Penitentiary and ordered to pay the cost of counselling for the victim.

## DECISION

**Was the prior bad acts evidence admissible to prove intent or common scheme?**

■ The admission of other acts testimony is governed by SDCL 19-12-5, which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under SDCL 19-12-5, the trial court must follow a two-step analysis when ruling on the admissibility of other acts evidence:

1. Whether the intended purpose for offering the other acts evidence is relevant to some material issue in the case (factual inquiry), and

2. Whether the probative value of the evidence is substantially outweighed by its prejudicial effect (legal inquiry).

*State v. Steele*, 510 N.W.2d 661, 667 (S.D. 1994). Here, the trial court determined that the evidence was admissible as proof of a common scheme or plan and as proof of intent. We review the trial court's decision to admit such evidence under the abuse of discretion standard. *Id.*

Prior bad act evidence is not admissible to show that, since a defendant committed a similar offense on another occasion, he has a propensity to commit the offense charged. SDCL 19-12-5; *Steele*, 510 N.W.2d at 668 n. 8; 2 J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 404[04] at 404-26 (1994).

In this case, the trial court followed all proper procedural steps and then admitted evidence of prior sexual contact with minors as proof of a common scheme or plan and as proof of intent. The trial court properly admitted the evidence under both the intent and plan exceptions.

### 1. Intent.

Ondricek argues that a defendant's complete denial of any wrongdoing negates the prosecution's need to offer evidence of intent. Ondricek would have the trial court defer such evidence until a defendant places intent in dispute or unless intent is clearly in dispute from the outset. Under this rationale, intent is only disputed when, for example, a defendant admits the physical contact with a minor but asserts the contact was inadvertent or by mistake.

█ Imposing this stringent "in dispute" standard would require overruling settled South Dakota case law. In *State v. Champagne*, 422 N.W.2d 840 (S.D.1988), this Court held "where specific intent is an element of an offense, proof of similar acts may be admitted to carry that burden even if the defense to the charge is a complete denial." *Id.* at 843 (citing *State v. Means*, 363 N.W.2d 565, 568 (S.D.1985)). In *Champagne*, we expressly considered and rejected the viewpoint put forward by Ondricek. *Id.* We reasoned the question of intent is *always* in issue in the case of sexual contact with a child, because an element of the offense charged is the specific intent to arouse or produce sexual gratification. *Id.* at 843–44; SDCL 22–22–7; SDCL 22–22–7.1. Consequently, "[e]xtrinsic evidence of intent is admissible in order for the state to meet its burden under a specific intent crime." *Champagne*, 422 N.W.2d at 844.

In a line of subsequent cases, we have reaffirmed this rule. In *State v. Klein*, 444 N.W.2d 16, 19 (S.D.1989), we wrote: "[W]here specific intent is an element of an offense, proof of similar acts may be admitted so that the State may carry its burden even if the defense to the charge is a complete denial." Similarly, in *State v. Basker*, 468 N.W.2d 413, 416 (S.D.1991), this Court opined: "Because the State must prove the touching was done with the intent to arouse or produce sexual gratification, the offense of sexual contact with a minor is a specific intent crime, and evidence of such intent may be proved by other acts evidence." Finally, in *State v. Christopherson*, 482 N.W.2d 298, 302 (S.D.1992), we held that bad acts evidence was admissible to prove intent where the defendant was accused of sexual contact with a minor, a specific intent crime.

We are aware of case law from the Second, Eighth, and Ninth Circuit Courts of Appeals that conflicts with our holdings. These cases stand for the proposition that if a defendant denies the act occurred, then intent is not in dispute and other acts evidence may not be admitted under the intent exception. *United States v. Jenkins*, 7 F.3d 803, 806–07 (8th Cir.1993); *United States v. Figueroa*, 618 F.2d 934, 941–42 (2nd Cir.1980); *United States v. Powell*, 587 F.2d 443, 448–49 (9th Cir.1978). However, as we noted when deciding this issue previously, a majority of other federal circuits have adopted the contrary and, in our opinion, better view. *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir.1994) (ruling that where the crime charged is one requiring specific intent, the prosecutor may use other acts evidence to prove the defendant acted with the specific intent, notwithstanding any defense the defendant might raise), *cert. denied*, —— U.S. ——, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995); *United States v. Mounts*, 35 F.3d 1208, 1215 (7th Cir.1994) (noting that the Seventh Circuit permits the government to present other acts evidence in its case-in-chief if the crime requires proof of specific intent), *cert. denied*, —— U.S. ——, 115 S.Ct. 1366, 131 L.Ed.2d 222 (1995); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 479–80 (10th Cir.1990) (holding that similar acts evidence is admissible to prove intent where intent to restrain competition was an element of the crime charged); *United States v. Carter*, 760 F.2d 1568, 1579 (11th Cir.1985) (ruling that extrinsic evidence could be used to prove intent, despite assertion of an alibi defense, because intent was an essential element of the crime charged).

Accepting Ondricek's rationale would improperly allow a defendant to foreclose the State from offering relevant evidence on an essential element of the crime. *United States v. Chaimson*, 760 F.2d 798, 805–06 (7th Cir.1985). We have previously rejected this outcome and, in light of the force of thoughtful precedent and persuasive authority, continue to do so.

### 2. Common Plan or Scheme.

Ondricek argues that his alleged sexual contact with his other nieces falls outside of the plan exception. We disagree.

■ " '[C]ommon plan, design or scheme' refers to a larger continuing plan, scheme or conspiracy of which the present crime charged at trial is only a part and which is often relevant to show motive, intent, knowledge or identity." *Champagne*, 422 N.W.2d at 842. Furthermore, where the defendant denies doing the charged act, evidence of a common plan or scheme to achieve the act is directly relevant to refute this general denial. *United States v. Weidman*, 572 F.2d 1199, 1202 (7th Cir.1978), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). By showing that the earlier schemes bore a singular strong resemblance to the pattern of the offense charged, the government establishes a preexisting plan or design which, in turn, tends to show the doing of the act designed. *Id.* at 1202–03 (citing *United States v. Jones*, 438 F.2d 461, 466 (7th Cir. 1971); 2 Wigmore, Evidence § 304 at 202 (1979)).

In *Christopherson*, 482 N.W.2d 298, we explored the dimensions of the plan exception in a sexual molestation case. The State accused Christopherson of five counts of sexual contact with a minor and one count of rape. All six counts arose out of Christopherson's alleged sexual contact with a fourteen-year-old boy. Evidence indicated that Christopherson, a family friend, molested the boy during overnight visits at the home of the boy's parents. The trial court admitted testimony of three other adult males who claimed Christopherson had sexual contact with them while they were minors. One of these witnesses testified that Christopherson molested him while they were on a camping trip with family and friends. Another stated that Christopherson befriended him and his mother and then initiated sexual contact with him during a camping trip. The third indicated he was a student in Christopherson's special education course and Christopherson repeatedly molested him when other students were out of the room. The jury convicted Christopherson of three counts of sexual contact. On appeal, we affirmed the admission of the other acts testimony, finding the evidence was admissible to prove a plan or common scheme. We wrote:

The bad act testimony in this case was admissible to prove a plan or a common scheme to develop situations which allowed

Christopherson to have sexual contact with young boys. First he would pick out an impressionable boy in his early teens. Christopherson always picked boys whose parents he knew or could get friendly with, making it more difficult for the boy to confide with his parents. Christopherson then used his role as an authority figure (teacher, supervisor or family friend) to work the boy into a situation where Christopherson was alone with him and able to have sexual contact. In each case Christopherson would tell the boy to keep it a secret. Christopherson would play off the desires or insecurities of the boy by promising a car, praying to God for forgiveness, or promising to get the boy out of special education. Christopherson never asked any of the boys to do anything to him.

*Christopherson*, 482 N.W.2d at 301.

In *State v. Perkins*, 444 N.W.2d 34 (S.D. 1989), another child molestation case, we again permitted admission of bad acts evidence to show a common scheme or plan. Perkins was charged with three counts of second-degree rape, stemming from three incidents of sexual contact with a female minor, D.J.K. All three incidents occurred when the girl was babysitting or visiting in Perkins' home. The trial court admitted testimony by two other girls indicating that Perkins had initiated sexual contact with them when they were babysitting his children or otherwise visiting his home. A jury convicted Perkins of all three counts. On appeal, in upholding the admission of the other acts testimony under the plan exception, we wrote:

The challenged testimony demonstrates a consistent pattern of molesting young girls with whom Perkins was long acquainted, when they were within his home. In each instance, Perkins approached the victim, and began fondling their breasts. Between the charges stemming from the D.J.K. incidents, and the four acts involving the other girls, a total of seven sexual encounters were presented. In four of the seven, the victim was present in the home as a baby-sitter staying overnight. In a fifth ... the victim was spending the night after staying late to help Perkins' wife with

a new baby, i.e. babysitting. Although Perkins asserts that the incidents involving [the other girls] were so different as to be irrelevant, the factual patterns are remarkably similar. The only real difference between the bad acts and the rape incidents is that D.J.K. made no physical act to stop Perkins, whereas [the other girls] did. Circumstances which surrounded the various acts and Perkins' behavior up to the point of physical resistance (which D.J.K. did not offer) are virtually the same. Perkins was not charged and convicted with a singular crime, based upon prior criminal or "wrong" conduct ... [R]ather, Perkins was charged with a series of criminal acts reflecting a plan to engage in sexual activity with very young girls.

444 N.W.2d at 38. *See also State v. Roden,* 380 N.W.2d 669, 670–71 (S.D.1986) (holding bad acts testimony showed a common scheme, where defendant's stepdaughter testified to incidents of sexual contact which paralleled the complaint made by the present victim).

■ As in these previous cases, a comparison between the other acts evidence and the crimes charged clearly demonstrates Ondricek's common plan or scheme to use family and recreational activities to prey on his young nieces. Ondricek was charged with one count of sexual contact and one count of rape involving his niece, E.P., a minor. The State also charged Ondricek with two counts of sexual contact with a minor, J.W., who was also Ondricek's niece.

At trial, E.P. testified that in October 1983, when she was six years old, she stayed with Ondricek and his wife while her parents were away. E.P. stated that during this visit Ondricek inserted his penis into her mouth after telling her a bedtime story. In the summer of 1986, when E.P. was eight or nine years old, Ondricek took E.P. swimming. When she was reluctant to remove her clothes, he helped her remove them and proceeded to rub her chest with his hands. She recalled a third incident when, after driving her home from a fishing or swimming excursion, Ondricek opened her legs and rubbed her vagina.

J.W. testified that when she was eight or nine, around 1985 or 1986, she lived with Ondricek and his wife while her parents were trucking. She stated that during this time

Ondricek would touch her vaginal area while drying her after a bath. She testified that Ondricek would have her pull her pants down and would remark that he would show her about sex. She stated Ondricek once slept with her in her bed when she was eight or nine and, when she awoke, told her she had "pulled his penis." She further testified that when she was twelve or thirteen Ondricek rubbed her genital area through her clothes after beginning to massage her legs and back.

In addition to this testimony by the alleged victims, the trial court admitted other acts testimony by two of Ondricek's grown nieces. L.P. testified that Ondricek took her swimming in 1969 or 1970, when she was four. While they were in the water, he rubbed her vagina, asked her to rub his exposed penis, and attempted to sexually penetrate her. L.P. testified that two or three years later, Ondricek took her sledding. When she hurt her groin area while sledding, Ondricek began rubbing her vagina and asked her to touch his penis. When L.P. refused, Ondricek stopped. A year or two later, when L.P. was eight years old, Ondricek took her fishing and raped her. Finally, when L.P. was eleven, Ondricek rubbed her breasts when she was alone with him at her parents' house. L.P. testified that after this incident, she was never alone with Ondricek.

D.P. testified that when she was four or five (around 1971) Ondricek asked her to go skinny dipping. When D.P. left her underwear on, he tried to help her remove them. D.P. moved away from Ondricek and went into the water. D.P. testified that when she was twelve (around 1978) Ondricek fondled her breasts while she was spending the night in a tent with him and his wife. D.P. stated that at family gatherings Ondricek would have his young nieces sit on his lap while he gave them back rubs. D.P. stated that when she sat on his lap he massaged close to her breasts, hips and pelvic area, making her uncomfortable.

Given the marked similarity between the charges against Ondricek and his prior bad acts, the other acts evidence was admissible to prove a common plan or scheme. Most of the charged and uncharged acts took place

during fishing, swimming, and camping trips which were initiated by Ondricek, or during his nieces' overnight visits at his home. During recreational excursions, Ondricek was typically alone with his victim, or accompanied by younger children who were unlikely to understand or report his sexual predation. During his nieces' overnight stays, he arranged to be alone with them by telling bedtime stories or offering to help them with their bath. In other words, Ondricek consistently used these family visits and recreational activities as a means to get his young nieces alone and sexually abuse them. The pattern established over the years by Ondricek is, in all material respects, indistinguishable from the common scheme of sexual predation found in *Perkins* and *Christopherson*. The trial court properly admitted other acts evidence to show this common scheme.

■ Ondricek's final contention is that other acts evidence should not have been admitted because of its remoteness. Ondricek observes that D.P.'s testimony concerned events which occurred between 1971 and 1978 and L.P.'s testimony involved events which occurred between 1969 and 1977. However, we have chosen not to set a rigid time limitation when determining whether bad acts are too remote. *Christopherson*, 482 N.W.2d at 302 (citing *State v. Wedemann*, 339 N.W.2d 112 (S.D.1983)). "Whether prior acts are too remote must realistically depend on their nature." *Id.* (citing *Wedemann*, 339 N.W.2d at 115). This case involves allegations of sexual abuse of young children who were members of the defendant's family. Taking into account the shame and fear often experienced by victims of abuse and the fact that victims of molestation are children, lengthy delays in reporting abuse, much less testifying to it in open court, are not surprising. The record indicates Ondricek's status as a family member further compounded his victims' reluctance to come forward; they feared any disclosures would be disbelieved or would destroy family ties. Additionally, Ondricek had to create opportunities during which he could abuse his victims. As we noted in *Christopherson*, while a purse snatcher can repeat his crime often and almost immediately, a child molester must get children in a situation where he can force his sexual desires upon them. 482

N.W.2d at 302. Consequently, the nature of Ondricek's acts, and the manner in which he operated, required his sexual improprieties be spread out over time. *See id.* Furthermore, unlike children who are victimized by parents, teachers, or babysitters, the record suggests the child victims in this case were able, to some extent, to avoid situations where they would be alone with the offender. Where such is the case, a longer time span between alleged offenses should not bar the admission of probative evidence. Finally, precedent from this Court supports the trial court's decision. *State v. Werner*, 482 N.W.2d 286, 289–90 (S.D.1992) (where pastor was accused of sexual contact with five female minors from October 1987 to March 1990, trial court properly admitted testimony indicating that the pastor had sexual contact with young women of his parish from 1962 to 1990); *Christopherson*, 482 N.W.2d at 302 (testimony regarding molestation which occurred up to seventeen years before trial was not too remote).

■ In summary, the trial court properly applied the two-prong test for admission of other acts evidence. First, as noted above, this evidence was relevant to vital issues in the case; namely, intent and a common scheme. Accordingly, the trial court instructed the jury that the other acts evidence could only be used as proof of intent or common scheme. Second, the probative value of the evidence was not substantially outweighed by its prejudicial effect. "Prejudice does not mean the damage to the opponent's case that results from the legitimate probative force of the evidence; rather, it refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." *State v. Iron Shell*, 336 N.W.2d 372, 375 (S.D.1983) (quoting 22 C. Wright & K. Graham, Federal Practice and Procedure § 5215 at 274–75 (1978)), *conviction rev'd on other grounds in habeas proceeding, Iron Shell v. Leapley*, 503 N.W.2d 868 (S.D.1993). There was substantial legitimate value in the testimony, both to establish an element of the offenses and to negate the defendant's claims that he did not commit the charged acts. The prior abuse was not "some collateral matter admitted for the purpose of prejudice." *Iron Shell*, 336 N.W.2d

at 375. Furthermore, in balancing probative value against prejudicial effect, our goal is "to avoid the introduction of extrinsic evidence which is likely to incite the jury to an irrational decision." *United States v. Williams*, 816 F.2d 1527, 1532 (11th Cir. 1987). Because the details of the other acts testimony are so similar to the details of the crimes with which Ondricek was charged, we cannot conclude that this evidence irrevocably swayed the jury toward an irrational judgment of guilt. *See id.* Indeed, given the jury's verdict of acquittal on three counts, unfair prejudice is doubtful.

Ondricek also contends that the trial court improperly denied his motion for a psychological examination of L.P. and that there was insufficient evidence to support his conviction. We have considered these claims and find them to be without merit.

Affirmed.

KONENKAMP and GILBERTSON, JJ., concur.

SABERS and AMUNDSON, JJ., dissent.

SABERS, Justice (dissenting).

I respectfully dissent.

Prior bad act evidence is not admissible to show that since a defendant committed a similar offense on another occasion, he has a propensity to commit the offense charged. SDCL 19–12–5; *State v. Steele*, 510 N.W.2d 661, 668 n. 8 (S.D.1994); 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 404[04], at 404–26 (1994). Proof of "other acts" is admissible if it is relevant to some material issue in dispute in the case.[1] *State v. Rose*, 324 N.W.2d 894, 895 (S.D.1982); SDCL 19–12–5 is a "rule of general *inadmissibility* with limited exceptions." *Steele*, 510 N.W.2d at 667 (citation omitted). "[T]rial courts must be 'ever vigilant' so that the rule is not swallowed up by the exceptions." *Id.*

This prior bad act testimony was offered and received under the intent and plan exceptions.

### 1. Intent

[U]se [under the intent exception] of other crimes is troubling because usually it involves a kind of particularized character inference. The defendant entertained the criminal intent on a prior occasion, so on the occasion of the charged offense he likely had the same intent. Very little space separates this inferential logic from the general propensity inference that FRE 404 [SDCL 19–12–5] seeks to prevent (he did it before, so he is the sort who behaves that way and probably did it this time). Hence courts are wise to take special precautions, and to exclude the evidence or defer it where such proof is not necessary because intent is readily inferred from the act itself (general intent crimes) or because there is no dispute on intent. For these reasons and others, evidence of other crimes should often be excluded when offered to prove intent.

1 C. Mueller and L. Kirkpatrick, *Federal Evidence* § 112, at 648 (2nd ed. 1994).

Here, the first two witnesses were prior bad act witnesses, rather than the victims of the crimes charged. The trial court should have excluded this testimony or at least deferred it until Ondricek put intent into dispute. *Id.*; *State v. Champagne*, 422 N.W.2d 840, 845 (S.D.1988) (Sabers, J. dissenting) (prior bad act evidence improper unless defendant claims the touching was accidental or innocent); *see also Rose*, 324 N.W.2d at 895 (intent in dispute where defendant admitted touchings occurred but denied sexual gratification intent). Intent is not in dispute if a defendant denies the touching occurred. *Id.*; *see* C. Hutton, Commentary: *Prior Bad Acts Evidence in Cases of Sexual Contact with a Child*, 34 S.D.L.Rev. 604, 610 (1989); *U.S. v. Powell*, 587 F.2d 443, 449 (9th Cir.1978) ("When a defendant denies participation in the act or acts which constitute the crime, intent is not a material issue for the purpose of applying Rule 404(b) [SDCL 19–12–5]"); *U.S. v. Jenkins*, 7 F.3d 803, 806–07 (8th

---

1. In *State v. Means*, 363 N.W.2d 565, 568 (S.D. 1985), this court eliminated the "in dispute" requirement for introduction of prior bad acts evidence for specific intent crimes such as sexual contact. This position was restated in *State v. Champagne*, 422 N.W.2d 840, 843 (S.D.1988). It was error to do so. *Id.* at 845 (Sabers, J., dis-

senting; *see State v. McDonald*, 500 N.W.2d 243, 249 (Sabers, J. concurring specially) (prior bad acts are admissible to prove knowledge and intent "once it was clear that the *real issue* was whether [defendant] knew the packet contained cocaine.").

Cir.1993) ("evidence of other crimes, wrongs or acts cannot be admitted when the defense is that defendant did not do the act").

The Second, Eighth and Ninth Circuit Courts of Appeals hold that if a defendant denies the act occurred, then intent is not in dispute. *Jenkins*, 7 F.3d at 807; *U.S. v. Figueroa*, 618 F.2d 934, 942 (2nd Cir.1980); *Powell*, 587 F.2d at 448. Therefore, any prior bad act evidence is merely character evidence and inadmissible in these circumstances. *Id.* The *Champagne* majority incorrectly allowed prior bad act evidence to be introduced for a specific intent crime. 422 N.W.2d at 843.

> [T]he [*Champagne*] court's dismissal of the requirement that intent be seriously in dispute—which it is not if the defendant denies the act completely—seems inconsistent with the purpose for which the intent requirement was originally inserted into the statute [SDCL 22–22–7].... [I]t appears to have been included as a means of describing and distinguishing noncriminal from criminal touchings, and not as a means of imposing a greater burden of proof on the government, or as a "backdoor" method of introducing prior bad acts evidence.

Hutton, *supra*, at 610.

In *U.S. v. Has No Horse*, 11 F.3d 104, 105 (8th Cir.1993), the trial court admitted prior bad act testimony from two girls who testified that the defendant made sexual advances toward them. The advances occurred about the same time as the charged offense. *Id.* The Eighth Circuit Court of Appeals held that the evidence was inadmissible under the exceptions for intent, knowledge, and common plan and reversed for a new trial, even though the court held substantial evidence existed to support the verdict absent the prior bad act evidence. *Id.* at 107. The prior bad act testimony was admitted "to show a propensity to commit such acts[,]" which is not permitted. *Id.* at 106; SDCL 19–12–5; *see Steele*, 510 N.W.2d at 668 n. 8;

*U.S. v. Soundingsides*, 820 F.2d 1232, 1237–38 (10th Cir.1987) (reversible error to admit evidence that murder defendant had beaten girlfriend regularly five years earlier and caused death of baby she was carrying; intent was not raised as a defense, and evidence of what happened to murder victim would support inference of intent without prior bad act evidence).

The Second Circuit Court of Appeals has ruled that if prior bad acts are to be offered to prove intent, then the offer of the evidence "should await the conclusion of the defendant's case and should be aimed at a specifically identified issue." *U.S. v. Colon*, 880 F.2d 650, 660 (2nd Cir.1989) (citations omitted). "This enables the trial judge to determine whether the issue sought to be proved by the evidence is really in dispute and, if so, to assess the probative worth of the evidence on this issue against its prejudicial effect." *Id.* After the defendant has "opened the door" to the issue, prior bad act evidence will be admissible.[2] *Id.* at 661; *see State v. Burtzlaff*, 493 N.W.2d 1, 5–6 (S.D.1992) (once defendant "opened the door" to prejudicial prior bad acts, State may introduce further evidence).

It is uncertain whether Ondricek would have taken the stand if the prior bad act testimony had not been offered in the State's case-in-chief. Since the State had already opened the door on the issue of sexual intent with the prior bad act testimony, it appears Ondricek had little choice but to take the stand to attempt to counter that testimony. Under these circumstances, it is reversible error for the State to introduce the prior bad act testimony in its case-in-chief unless intent is clearly in dispute. *See Colon*, 880 F.2d at 661–62.

We should hold that intent must be in dispute before any prior bad act evidence is admissible. The trial court must defer such evidence until the defendant places intent in dispute or intent is clearly in dispute from the outset.[3] *See McDonald*, 500 N.W.2d at

---

2. The Second Circuit Court of Appeals recognizes an exception when the issue of intent is clearly in dispute. *Colon*, 880 F.2d at 660 (citations omitted). The cases cited deal with crimes with "intent to defraud" as an element where the defendant placed the issue of intent into issue.

3. In considering the possibility that the defendant might present no evidence, the Second Circuit has noted:

> Defendants frequently do not disclose whether there will be a defense case until the prosecution has rested its case. Consequently, the safer course in offering similar act evidence

249 (Sabers, J. concurring specially) (since issue was whether defendant knew packet contained cocaine, prior bad acts were admissible to prove knowledge and intent); *Rose*, 324 N.W.2d 894 (defendant admitted touchings occurred but denied sexual gratification intent).

### 2. Common Plan or Scheme

The trial court also admitted the prior bad act testimony under the plan exception. SDCL 19–12–5. The 'plan' exception deals with acts which are done in connection with a "larger continuing plan, scheme or conspiracy of which the present crime is only a part[.]" *Champagne*, 422 N.W.2d at 842 (citations omitted).

State claims that Ondricek's actions against J.W. and E.P. and his other nieces were part of a common scheme of getting his nieces alone during family or recreational activities then preying upon them. State claims these activities come within a "larger continuing plan ... of which the present crime is only a part." *Id.* I disagree. Ondricek's activity with E.P. constituted separate, independent acts or mere repetition of similar acts, an impermissible propensity suggestion. The distinction and greater latitude given to admission of prior bad acts in sexual molestation cases should be exercised only in the context of same defendant/same victim. *Champagne*, 422 N.W.2d at 845–46 (Sabers, J., dissenting).

In addition, the other acts should not have been admitted under the plan exception considering their remoteness. *U.S. v. Fawbush*, 900 F.2d 150, 151–52 (8th Cir.1990) (testimony by adult daughters of childhood sexual abuse eight years earlier too remote and prejudicial, causing reversible error); *U.S. v. Davis*, 657 F.2d 637, 639–40 (prior bad act occurring six years earlier did not show intent or plan); *U.S. v. Krezdorn*, 639 F.2d 1327, 1331–1332 (5th Cir.1981) (prior forms showing forged signatures only showed repetition of similar acts, an impermissible pro-

pensity suggestion); *U.S. v. O'Connor*, 580 F.2d 38, 41–42 (2nd Cir.1978) (proof of prior bribes might prove character, but not show specific plan).

The trial court should carefully consider the remoteness of the previous events in determining their probative value for purpose of common plan or scheme. *State v. Christopherson*, 482 N.W.2d 298, 305–06 (S.D.1992) (Sabers and Amundson, JJ. dissenting); *see C. Mueller and L. Kirkpatrick, supra* § 108, at 600. Here, the prior bad act testimony concerned events that occurred almost twenty years earlier. D.P.'s testimony concerned events that happened between 1972 and 1978 and L.P.'s testimony concerned events that happened between 1969 and 1976 (except for a 1991 incident in an antique store in which Ondricek patted her pregnant stomach and stated: "my baby's having a baby," which may be an admission against interest). These events are very remote when considering common plan or scheme.

"[T]hese uncharged prior bad acts were *too* prejudicial and *too* remote and prevented the defendant from receiving a fair trial." *Christopherson*, 482 N.W.2d at 306 (Sabers and Amundson, JJ. dissenting) (citation omitted). Prior bad act evidence should not be used to show that defendant is a "bad person." *State v. Werner*, 482 N.W.2d 286, 296 (S.D.1992) (Amundson, J. concurring in part, dissenting in part). "The admission of this evidence allowed the defendant to be judged on the basis of innuendo" from uncharged acts. *Id.*

In *Fawbush*, 900 F.2d at 152, the Eighth Circuit Court of Appeals reversed the trial court's allowance of prior sexual abuse testimony by the defendant's adult daughters under the exceptions for motive, plan, intent and knowledge. The court held that such testimony did not show a unique method which tended to establish defendant as the perpetrator. *Id.* at 151. Furthermore, the

that should normally await the prosecution's rebuttal case, is for the prosecution to rest, reserving, out of the presence of the jury, the right to reopen to present such evidence in the event the defendants rest without introducing evidence. If that occurs and the evidence is subsequently admitted, the trial judge can in-

form the jury that court procedure obliged the prosecution to defer its similar act evidence, thereby avoiding any unwarranted inference that the prosecution was desperately using a last-minute tactic.

*Colon*, 880 F.2d at 660–61 n. 2 (citations omitted).

court held that the prior sexual abuse evidence was relevant to the exceptions listed under Rule 404(b) [SDCL 19–12–5] "only insofar as the previous sexual abuse tended to show a propensity to commit such acts." *Id.* The acts which had occurred over eight years before the charged offenses provided no proof of opportunity or preparation. *Id.* at 151–52. The absence of mistake or accident was not at issue in the trial because defendant denied such touchings occurred. *Id.* The prior bad acts were not reasonably close in time to the offenses charged. *Id.; see Davis,* 657 F.2d at 639–40 (4th Cir.1981) (prior bad acts occurring 6 to 11 years earlier too remote in time). The evidence of incest and pregnancy was inflammatory. *Fawbush,* 900 F.2d at 152. Here, the evidence of a prior rape approximately 19 years before was highly inflammatory with little probative value to common plan or scheme. *Id.; see Government of the Virgin Islands v. Pinney,* 967 F.2d 912, 915–917 (3rd Cir.1992) (reversible error to admit proof of prior rape in rape trial; evidence was highly inflammatory and had minimal probative worth).

In *Pinney,* 967 F.2d at 915–917, the court held it was reversible error to admit evidence of a prior rape of victim's sister six years earlier. The prior bad acts were only admissible under the plan exception when they are part of a "single series of events." *Id.* at 916. The court noted:

> [T]here is no dispute in this case about the identity of the individual ... or about whether any sexual intercourse ... was accidental. The trial was about whether or not sexual intercourse occurred[.] ... It was her word against his and if the jury believed her testimony that she was raped ... it is inconceivable that it would have found that he acted by mistake or that the perpetrator was someone else.... The obvious reason the government wanted the [prior rape] testimony before the jury was because of the substantial likelihood that one or more members of the jury would use this highly inflammatory evidence for exactly the purpose Rule 404(b) [SDCL 19–12–5] declared to be improper—i.e., drawing the inference that [defendant] was the kind of person who raped young girls and that, accordingly, he must have raped [victim].

*Id.* at 917; *see also Werner,* 482 N.W.2d at 295 (Amundson, J. concurring in part, dissenting in part) (use of this evidence might make jurors infer that defendant has a propensity to commit crimes and probably committed the crime charged).

In this case, the trial court did caution the jury that the testimony of D.P. and L.P. may "be used only to show intent and/or a common scheme on the part of the defendant." Cautionary jury instructions are not likely to protect against unfair prejudice when this type of evidence is introduced. *Pinney,* 967 F.2d at 918; *Fawbush,* 900 F.2d at 152. "[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton v. United States,* 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968). Here, the prior bad act testimony, especially L.P.'s rape allegation, is so "emotionally charged" that any jury instructions may not be sufficient to ensure a fair trial. *Id.; Pinney,* 967 F.2d at 918; *Fawbush,* 900 F.2d at 152 (jury instructions did not reduce risk that evidence would be used for an improper purpose).

Prior bad act evidence relating to prior victims should be admissible in the state's case-in-chief under the common plan or scheme exception only when the acts are done as part of a larger continuing plan, scheme or conspiracy of which the present crime is only a part (i.e., as part of a single series of events).

Under these circumstances, it was reversible error for the trial court to allow the prior bad act testimony of D.P. and L.P. It created an impermissible propensity inference, SDCL 19–12–5, and was so inflammatory that cautionary jury instructions were insufficient to ensure a fair trial. We should reverse and remand for a new trial consistent with this writing.

AMUNDSON, J., joins this dissent.