1998 SD 126

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Robert STEICHEN, Defendant and Appellant.**

No. 20347.

Supreme Court of South Dakota.

Argued Sept. 15, 1998.

Decided Dec. 23, 1998.

Rehearing Denied Feb. 2, 1999.

Mark Barnett, Atty. Gen., Anthony M. Sanchez, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Rodney Freeman, Kent Shelton, and Jeff Burns of Churchill, Manolis, Freeman, Kludt and Shelton, Huron, for defendant and appellant.

MILLER, Chief Justice.

[¶ 1.] Steichen appeals his conviction on several charges, including first-degree rape, third-degree rape, and sexual contact with a child under sixteen. We affirm.

## FACTS

[¶ 2.] Steichen was charged in Aurora County with three counts of first-degree rape and in Jerauld County with seven counts of third-degree rape and one count of sexual contact with a child under sixteen. He pleaded not guilty on all counts. The judge granted Steichen's motion for consolidation, and all charges were tried in Aurora County.

[¶ 3.] The Aurora County charges arose out of Steichen's sexual acts against HF, his six-year-old stepdaughter. It was alleged that between January 10 and February 12, 1997, Steichen penetrated HF's anus and mouth with his penis. The acts all occurred at night in the Steichen home, when his wife Phyllis was away. HF testified that Steichen threatened to kill her if she told anyone what he had done to her.

[¶ 4.] The Jerauld County charges stemmed from Steichen's sexual acts against KC. The alleged acts began in 1996, when KC was fourteen years old and baby-sitting Steichen's children and stepchildren, and occurred at night in the Steichen home while Phyllis was away. According to KC, in July of 1996, Steichen kissed her, fondled her breasts, and digitally penetrated her vagina.

In the middle of July, Steichen again digitally penetrated KC's vagina, kissed her, fondled her breasts, and vaginally penetrated her with his penis. In another mid-July incident, Steichen fondled KC's breasts, penetrated her anally with his penis, kissed her, and told her he loved her. In August, Steichen kissed KC, told her he loved her, fondled her breasts, and penetrated her vaginally with his penis. Again in August, Steichen fondled KC's breasts and forced her to perform fellatio on him. In December, Steichen vaginally penetrated KC with his penis, kissed her, told her he loved her, and fondled her breasts. In January of 1997, Steichen kissed KC, fondled her breasts and digitally penetrated her vagina. KC also testified that Steichen told her he would kill her if she told anyone what he had done to her.

[¶ 5.] Prior to trial, the State filed a motion for admission of evidence of Steichen's "other acts." After a hearing, the trial court granted the motion, finding the other acts evidence was relevant to show motive, common scheme and plan, opportunity, lack of mistake or accident, and continuing course of criminal conduct. The court further found that the probative value of the other acts substantially outweighed the potential for unfair prejudice.

[¶ 6.] Steichen was found guilty on all eleven counts. On the three counts of first-degree rape in Aurora County, he was sentenced to thirty years on count one, seventy-five years on count two, and to life imprisonment on count three. On the Jerauld County charges, Steichen was sentenced to eight years for one count of third-degree rape, fifteen years on each of six counts of third-degree rape, and fifteen years for the one count of sexual contact with a child under sixteen. Steichen is responsible for up to $35,000 in restitution for each victim for any counseling received.

[¶ 7.] On appeal, Steichen raises the following issues:

1. Whether the trial court abused its discretion in allowing other acts evidence to be admitted.

2. Whether the trial court erred in not allowing Steichen to confront MF concerning other sexual acts with HF.

### DECISION

[¶ 8.] **1. The trial court did not abuse its discretion in allowing other acts evidence to be admitted.**

[¶ 9.] Steichen argues the trial court abused its discretion in allowing other acts evidence to be admitted. We disagree.

#### a. *Other Acts Evidence*

[¶ 10.] Steichen would have us believe that fourteen witnesses provided other acts evidence at trial. Upon review of the record, however, we find that number to be inaccurate.[1] The other acts evidence admitted at trial included testimony from KC, the victim in the Jerauld County charges.[2] Other acts evidence also came from the testimony of two of Steichen's former stepchildren and two former baby-sitters.

[¶ 11.] KC testified that in June of 1996, Steichen was driving a van with his children, stepchildren and KC as passengers. Steichen asked KC if he could feel her breasts. When she refused, Steichen reached over, lifted her shirt, and fondled her breasts. KC also witnessed Steichen strike his children, stepchildren and Phyllis when she was pregnant.

[¶ 12.] MF, HF's older sister and Steichen's stepdaughter, testified to sexual acts Steichen committed against her when she

1. For example, Steichen claims BS testified as to Steichen's other acts. This is clearly not the case. BS denied that Steichen did anything bad to her and denied witnessing Steichen having done anything bad to anyone else. In fact, BS responded to most questions by simply shaking her head "no."

2. Steichen claims HF, the victim of the Aurora County charges, also provided other acts evidence. Our review of the record finds that HF testified to acts that are the basis of the current charges and not other acts.

was between the ages of nine and eleven or twelve. These acts all occurred at night in the Steichen home when MF's mother was away from the home. She testified that Steichen touched her vagina with his fingers, performed cunnilingus on her more than ten times, fondled her breasts, and kissed her. Steichen told her he would kill her if she told anyone what he had done to her. MF also testified that Steichen had struck her, her sisters, and her mother.

[¶ 13.] LR, a former baby-sitter for Steichen's children and stepchildren, testified that, in June 1992 when she was fourteen years old, she had "consensual" sex with Steichen.[3] This occurred at night in the Steichen home, when Phyllis was hospitalized after giving birth to a daughter. Steichen kissed her and vaginally penetrated her with his penis. In 1993, Steichen and LR also had "consensual" sex in the home of one of LR's friends. Steichen penetrated LR vaginally with his penis and performed cunnilingus on her. LR also witnessed Steichen strike his wife.

[¶ 14.] CP, Steichen's former stepson, testified to acts that occurred in 1989, when CP was only six or seven years old. The acts occurred at night in the Steichen home. Steichen anally penetrated CP with his penis and performed fellatio upon him.

[¶ 15.] BC, a former baby-sitter for the Steichen children and stepchildren, testified that Steichen had sexual contact with her at the end of July or beginning of August 1996. BC was thirteen years old at the time. Steichen rubbed BC's vaginal area under her shorts, but above her underwear. He attempted to kiss her and grabbed one of her breasts. This took place at night in the Steichen home.

*b. Analysis*

[¶ 16.] A trial court's decision to allow the admission of other acts evidence

will not be reversed unless the trial court abused its discretion. *State v. Christopherson,* 482 N.W.2d 298, 300 (S.D.1992). The review is " 'not whether the judges of this court would have made an original like ruling, but rather whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion.' " *Id.* at 302 (quoting *State v. Rose,* 324 N.W.2d 894, 895–96 (S.D.1982) (citation omitted)).

[¶ 17.] Evidence of a defendant's other crimes or acts is generally not admissible, unless an exception can be met. SDCL 19–12–5; *State v. Moeller,* 1996 SD 60, ¶ 12, 548 N.W.2d 465, 471; *State v. Chamley,* 1997 SD 107, ¶ 9, 568 N.W.2d 607, 611. The admission of other acts evidence is governed by SDCL 19–12–5, which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*See State v. Ondricek,* 535 N.W.2d 872, 873 (S.D.1995). "[P]rior bad acts evidence is not admissible to show that, merely because a defendant committed a similar offense on another occasion, he has a propensity to commit the offense charged." *Moeller,* 1996 SD 60, ¶ 12, 548 N.W.2d at 471 (citations omitted). However, it may be admitted for other purposes, such as those listed in the statute. *State v. Champagne,* 422 N.W.2d 840, 842 (S.D.1988).[4]

[¶ 18.] Before other acts evidence can be admitted, the trial court must engage in a two-prong analysis:

(1) Whether the intended purpose for offering the other acts evidence is relevant to some material issue in the case (factual relevancy); and

---

**3.** Even though the act has been characterized as consensual, it is not possible for an individual under the age of sixteen to have consensual sex with someone who is at least three years older. *See* SDCL 22–22–1.

**4.** As evidenced by the language of the statute, "[t]he list of the exclusions in the statutes is not exhaustive[.]" *Werner,* 482 N.W.2d at 289.

(2) Whether the probative value of the evidence is substantially outweighed by its prejudicial effect (legal relevancy).

*Ondricek*, 535 N.W.2d at 873 (citing *State v. Steele*, 510 N.W.2d 661, 667 (S.D.1994)).

[¶ 19.] Generally, " 'it is preferable to delay the admission of [other acts] evidence until the defense rests.' " *State v. Werner*, 482 N.W.2d 286, 290 (S.D.1992) (quoting *United States v. Estabrook*, 774 F.2d 284, 289 (8th Cir.1985)). Once the defense rests, the trial court is then in the "best position to determine whether the issue sought to be proved by the extrinsic evidence is really in dispute, and if so, to assess its probative worth and possible prejudicial effect." *Id.* However, admission of other acts evidence may be properly admitted during the State's case-in-chief. *Id.* ("[W]here it is made clear at the outset of the trial that the defendant's principal defense is lack of knowledge or intent, and thus the issue is unarguably in dispute, the government may introduce the [other acts] evidence in its case-in-chief."). "[T]he order of proof is within the sound discretion of the trial court[.]" *Id.*

### (1) *Relevancy*

[¶ 20.] First, for other acts evidence to be admissible it must be relevant. Relevant evidence is "[e]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19–12–1; *see State v. McDonald*, 421 N.W.2d 492, 494 (S.D.1988). Other acts evidence is admissible "as long as proof of the intended purpose is relevant to some material issue in the case." *Champagne*, 422 N.W.2d at 842 (citing *State v. Dokken*, 385 N.W.2d 493, 497 (S.D.1986)). Here, the trial court determined that the other acts evidence was relevant to show motive, common scheme and plan, opportunity, lack of mistake, and continuing course of criminal conduct.

### (a) *Motive*

[¶ 21.] Steichen argues the other acts evidence was not relevant to show mo-

tive. He relies on our statement in *Moeller* that "[t]he perpetrator's motive, to satisfy a sexual need, is also abundantly clear by proving the rape itself." 1996 SD 60, ¶ 36, 548 N.W.2d at 477 (citing 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 110 at 625 (2d Ed.1994)). *Moeller*, however, can be distinguished from this case. In *Moeller*, forensic evidence was available to establish a rape had been committed. *Id.* There was evidence of anal and vaginal penetration and semen was present in the victim's body, which "established the assailant's intent to commit rape." *Id.* The forensic evidence available in *Moeller* is not available here. Without that evidence, the intent to commit rape cannot be conclusively established. Therefore, evidence of Steichen's other acts was admissible to establish motive.

### (b) *Common Plan, Design or Scheme*

[¶ 22.] Steichen also challenges the admission of other acts evidence under the common plan, design or scheme exception. He contends this exception is inapplicable because it encompasses modus operandi, which is used to identify the perpetrator, and identity is not at issue here. He further claims the other acts were not necessary for the commission of the acts charged. We disagree.

[¶ 23.] " '[C]ommon plan, design or scheme' refers to a larger continuing plan, scheme or conspiracy of which the present crime charged at trial is only a part and which is often relevant to show motive, intent, knowledge or identity.' " *Ondricek*, 535 N.W.2d at 875 (quoting *Champagne*, 422 N.W.2d at 842). In addition, " 'where the defendant denies doing the charged act, evidence of a common plan or scheme to achieve the act is directly relevant to refute this general denial.' " *Id.* (citing *United States v. Weidman*, 572 F.2d 1199, 1202 (7thCir.1978), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978)).

[¶ 24.] Steichen's defense is a complete denial of the crimes charged. This denial places his identity in issue. *Moeller*, 1996

SD 60, ¶ 15, 548 N.W.2d at 472. With identity in issue, the other acts evidence was properly admitted under the common plan, scheme, or design exception to refute Steichen's general denial. It was also properly admitted to establish Steichen's identity as the perpetrator, and to show his plan to sexually assault children with whom he had a close relationship. *See Ondricek,* 535 N.W.2d at 877 (other acts evidence admissible to show plan of "using family visits and recreational activities as a means to get his young nieces alone and sexually abuse them"); *Christopherson,* 482 N.W.2d at 301 (other acts evidence admissible to show plan to "develop situations which allowed [defendant] to have sexual contact with young boys"); *State v. Perkins,* 444 N.W.2d 34, 38 (S.D.1989) (other acts testimony admissible to show plan "to engage in sexual activity with very young girls").

### (c) *Continuing Course of Criminal Conduct*

[¶ 25.] We find evidence of Steichen's other acts was also properly admitted to show a continuing course of criminal conduct. *See State v. Floody,* 481 N.W.2d 242, 254 (S.D.1992); *see generally State v. Sieler,* 397 N.W.2d 89 (S.D.1986). Comparing the crimes for which Steichen is charged with the other acts evidence demonstrates the crimes charged are a continuation of Steichen's criminal conduct. In 1989, Steichen began sexually abusing young children who were present in his home. This abuse started with his stepson. This criminal conduct continued with his stepdaughters and young girls who were baby-sitters in his home. This eight-year course of criminal conduct continued until Steichen was arrested.

### (d) *Lack of mistake or accident*

[¶ 26.] The trial court admitted other acts evidence under the lack of mistake or accident exception. Steichen argues that this exception is inapplicable because he denies the acts occurred. We find admitting other acts evidence under this exception was error, but does not reach the level of reversible error. *See* SDCL 23A–44–14 (stating "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded"); *see also State v. Larson,* 512 N.W.2d 732, 736–37 (S.D.1994) (stating it was harmless error when the court failed to perform the probative value versus the potential for unfair prejudice balancing on the record). The error was harmless, because Steichen's case was not prejudiced by the trial court's decision. *State v. Schuster,* 502 N.W.2d 565, 570 (S.D.1993) (stating that for the appellate court to find harmless error, the admission of the erroneous evidence must not prejudice the defendant's case). As we have already decided, the other acts evidence was properly admitted to establish motive, a common plan or scheme, and continuing course of criminal conduct. To reverse on this issue would serve no purpose.

### (2) *Probative v. Prejudice*

[¶ 27.] After the trial court determines the relevancy of the other acts testimony, it must then balance the probative value of the evidence against the potential for unfair prejudice. "Prejudicial evidence is that which has the capacity to persuade the jury by illegitimate means which results in one party having an unfair advantage. Evidence is not prejudicial merely because its legitimate probative force damages the defendant's case." *State v. Barber,* 1996 SD 96, ¶ 19, 552 N.W.2d 817, 821 (citing *State v. Goodroad,* 442 N.W.2d 246 (S.D.1989)). Even though the admission of other acts evidence "will usually result in some prejudice," it will not be admitted only if that prejudice is unfair. *State v. Titus,* 426 N.W.2d 578, 580 (S.D.1988).

[¶ 28.] Steichen claims the trial court did not adequately perform the balancing test, which resulted in his being unfairly prejudiced by the admission of other acts evidence. First, Steichen argues he was unfairly prejudiced by the admission of other acts evidence of a 1989 incident involving CP. He claims the other act was so remote in time that its probative value was substantially outweighed by its potential for unfair prej-

udice. However, when addressing the remoteness of prior acts evidence, this Court has stated that "determining the remoteness of other acts must realistically depend upon their nature." *Perkins,* 444 N.W.2d at 38. There is no "rigid time limitation when determining whether bad acts are too remote." *Ondricek,* 535 N.W.2d at 877 (acts that occurred twenty years prior to the acts charged were not too remote); *Werner,* 482 N.W.2d at 290 (acts that occurred twenty-five years before charged acts were not too remote); *Christopherson,* 482 N.W.2d at 302 (acts that occurred seventeen years prior to acts charged were not too remote).

[¶ 29.] In this case, the 1989 incident involving CP was not too remote to have probative value. Steichen's plan was to sexually abuse children with whom he had a trust relationship. CP, as Steichen's stepson, fit into that plan. Shortly after Steichen sexually assaulted CP, Steichen's marriage to CP's mother ended. He no longer had an available victim and had to wait for another opportunity to sexually abuse young children. That opportunity came when he married Phyllis. The sexual abuse that started with CP continued with Steichen's new stepchildren and the children's baby-sitters. The 1989 incident was the beginning of Steichen's plan to sexually abuse children and was of the same nature as the crimes charged.

[¶ 30.] Next, Steichen maintains the court's analysis of the similarities of the other acts with the acts charged was inadequate. We disagree. When a court determines similarity, " [e]vidence of prior acts need not be that of an identical offense but only 'of similar involvement reasonably related to the offending conduct.' " *State v. Loftus,* 1997 SD 94, ¶ 25, 566 N.W.2d 825, 830 (quoting *State v. Pedde,* 334 N.W.2d 41, 43 (S.D.1983) (other citations omitted)). When analyzing the similarities in this case, the trial court found that "the prior acts were substantially similar and any dissimilarities [were] inconsequential."

[¶ 31.] In addition, the court found that "when considering the specific and overall prior acts, their similarity, their occasions and locations, and their nature, it is apparent that their probative value substantially outweighs the potential for unfair prejudice." We agree with the trial court and hold that, though not identical, Steichen's other acts are similar to the charged offenses in a number of ways: (1) the acts were all against young children with whom he had developed a trust relationship, baby-sitters and his stepchildren; (2) the acts occurred when his spouse was away or asleep; (3) the acts occurred at night; (4) the acts occurred in the Steichen home, except for the van incident with KC and one act of sex with LR; and (5) the victims of Steichen's other acts were subject to sexual abuses of the same nature as the crimes charged. Even though not every victim was abused in the same way, the acts were sufficiently similar.

[¶ 32.] In addition, in balancing the probative value of the prior acts evidence against the potential for unfair prejudice, the trial court considered the availability of other evidence. *See, e.g., State v. White,* 538 N.W.2d 237, 243 (S.D.1995) (in balancing the "probative value against undue prejudice," the court found "substantial need" to offer evidence of defendant's entry into victim's home when no other evidence was available on the issue). The trial court found there was no other evidence "of equal probative value ... that could be introduced to prove the charges contained in the indictment." We agree. The physical evidence needed to prove the crimes charged was limited, so admitting other acts evidence was proper.

[¶ 33.] Moreover, we find Steichen's contention that the balancing test was inadequately performed to be without merit. Nothing in the record supports this contention. Our review of the record shows the court had sufficient information before it to adequately perform the balancing test. When performing the balancing, the trial court entered findings of facts and conclusions of law. *See, e.g., Barber,* 1996 SD 96, ¶ 29, 552 N.W.2d at 822. The court clearly stated the exceptions under which the evi-

dence could be admitted and instructed the jury as to the purposes for which the other acts testimony could be used. *See Werner*, 482 N.W.2d at 290. The trial court followed the necessary procedures to determine if the probative value of the other acts evidence was substantially outweighed by the potential for unfair prejudice. The court found it was not. We agree.

[¶ 34.] In summary, the trial court did not abuse its discretion in admitting other acts evidence. It determined the other acts evidence to be relevant to show motive, common plan or scheme, opportunity, and continuing course of criminal conduct. It balanced the probative value against the potential for unfair prejudice, and found that the potential for unfair prejudice did not substantially outweigh the probative value. It committed no error in admitting the testimony.

**[¶ 35.] 2. The trial court did not abuse its discretion by not allowing Steichen to confront MF concerning prior sexual acts with HF.**

[¶ 36.] Steichen argues that the trial court abused its discretion by not allowing him to cross-examine MF about her prior sexual behavior with a sibling.[5] He claims that the limit the trial court placed upon the cross-examination did not allow him to impeach MF's credibility "by exploring an area which could have revealed exculpatory evidence concerning the current charges." We do not agree.

[¶ 37.] "[T]he trial court retains broad discretion concerning the limitation of cross-examination and it will be reversed only when there is a clear showing of abuse of the discretion and a showing of prejudice to the defendant." *State v. Koepsell*, 508 N.W.2d 591, 595 (S.D.1993) (citing *United States v. Crump*, 934 F.2d 947, 951 (8thCir.1991)) (other citations omitted). The

defendant has the burden of establishing that "a reasonable jury probably would have a significantly different impression if otherwise appropriate cross-examination had been permitted." *Id.* at 595 (citing *Delaware v. VanArsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674, 684 (1986); *State v. Bogenreif*, 465 N.W.2d 777, 782 (S.D.1991)).

[¶ 38.] Steichen cannot establish that he was prejudiced by this limitation on cross-examination. He was allowed to cross-examine MF in other areas, which provided the jury with the opportunity to determine her credibility. Steichen has not established that the jury would have had any other impression had this cross-examination been allowed.

[¶ 39.] In addition, MF's testimony in this area is irrelevant. The alleged conduct did not involve HF, but involved BS. The trial court found the alleged conduct was "not even in the same category as the allegations that have been charged or alluded to or stated as other acts." We agree and hold that the trial court did not abuse its discretion by limiting Steichen's cross-examination of MF.

[¶ 40.] Affirmed.

[¶ 41.] KONENKAMP and GILBERTSON, Justices, concur.

[¶ 42.] SABERS and AMUNDSON, Justices, dissent.

SABERS, Justice (dissenting).

[¶ 43.] I respectfully dissent. The trial court improperly allowed the State to bombard the jury with other acts evidence in its case-in-chief. The other acts evidence was not relevant to a material issue in the case and was highly prejudicial. We should reverse and remand for a fair trial.

[¶ 44.] Motive was not a material issue. *State v. Werner*, 482 N.W.2d 286, 297 (S.D.

---

5. Steichen initially claimed MF had used a toothbrush to sexually assault HF anally. Because of this assault, he argues his cross-examination was "crucial" to determine MF's credibility and to determine if MF, and not Steichen, may have

caused HF's injuries. In his reply brief, Steichen notes the "toothbrush incident" did not involve HF, but involved BS whose injuries were not in issue.

1992) (Sabers, J., dissenting). The majority claims motive was relevant to prove intent. *See* ¶ 21 of the majority opinion. However, intent is not in dispute when the defendant denies the touching occurred. *State v. Ondricek,* 535 N.W.2d 872, 878 (S.D.1995) (Sabers, J., dissenting) (citations omitted). At a minimum, the trial court should have deferred the other acts evidence until intent became an issue. *Id.* (citations omitted).

[¶ 45.] The trial court also allowed the State to use other acts evidence to prove a common plan or scheme and a continuing course of criminal activity. Steichen's identity was not in issue; the victims were clear about who had committed the alleged crimes. Steichen's defense was that he did not commit the charged acts, not that he was wrongly identified as the person who did. · *State v. Champagne,* 422 N.W.2d 840, 846 (S.D.1988) (Sabers, J., dissenting). The other acts evidence constituted separate, independent, uncharged criminal acts which created an impermissible propensity inference. *Ondricek,* 535 N.W.2d at 880 (Sabers, J., dissenting).

[¶ 46.] The other acts evidence served only to paint Steichen as a sick, bad man. *See Werner,* 482 N.W.2d at 297 (Sabers, J., dissenting) (stating that "[t]he prior bad acts testimony in this case painted the defendant not only as a bad man but also as an evil and conniving man."). The other acts evidence was not offered in rebuttal, but was presented in the State's case-in-chief. The State took a shotgun approach of bombarding the jury with other acts evidence creating the impermissible inference that because Steichen was a "bad man" he must have committed the charged acts.

[¶ 47.] Allowing the use of other acts evidence in the State's case-in-chief put Steichen in an adverse position where he had to defend against numerous uncharged acts and was incapable of receiving a fair trial. *See Werner,* 482 N.W.2d at 296 (Amundson, J., concurring in part and dissenting in part). The prejudicial effect of this evidence so outweighed any probative value that Steichen was denied the fair trial guaranteed by the United States Constitution and the South Dakota Constitution.

[¶ 48.] As I have previously stated:

The South Dakota Legislature could, within constitutional limits, make all prior bad acts admissible in sex molestation cases. It could do so simply by enacting a law which states that all such evidence is admissible without regard to relevancy, materiality and prejudice. However, until the legislature does so, we should enforce the law and require the prosecutor to prove relevancy, materiality and that the prejudicial effect of such evidence does not substantially outweigh its probative value.

*Werner,* 482 N.W.2d at 297 (Sabers, J., dissenting) (citation omitted). The majority opinion is throwing out our recent strides in *Moeller* and *Chamley* of preventing the exceptions to SDCL 19–12–5 from swallowing the rule of general inadmissibility of other acts evidence.

[¶ 49.] Steichen was denied a fair trial by the admission of other acts evidence. The other acts evidence was not relevant to a material issue and created an impermissible propensity inference. It is unnecessary to reach the other issue raised by Steichen because we should reverse on the issue of other acts evidence and remand for a new, fair trial.

AMUNDSON, Justice (dissenting).

[¶ 50.] I dissent.

[¶ 51.] In regards to the general inadmissibility of prior acts, this Court hit the nail on the head when it stated in *Moeller:*

Generally, evidence of crimes or acts other than the ones with which the defendant is charged are inadmissible, unless certain exceptions apply.... Under [SDCL 19–12–5], prior bad acts evidence is not admissible to show that, merely because a defendant committed a similar offense on another occasion, he has a propensity to commit the offense charged.

1996 SD 60, ¶ 12, 548 N.W.2d 465, 471 (citations omitted).

[¶ 52.] This general rule of excluding prior acts rests on sound policy and constitutional principles:

> Introduction of evidence that the defendant committed other crimes and unwholesome acts may lead jurors to return a verdict of guilty for reasons other than finding all the elements of the alleged crime beyond a reasonable doubt. Although reasonable doubt of guilt exists on this occasion, the jury might conclude the defendant is a "bad man," who deserves punishment regardless of his innocence of the crime charged and warrants imprisonment to prevent future maleficent acts. Such results defeat the letter and policy of substantive criminal law mandating conviction based upon a non-vague concrete statute; instead, jurors have found the defendant guilty based upon past unsavory acts without necessarily violating any criminal statute in the process. Alternatively, and just as improperly, upon learning that the accused committed other crimes or wrongs, jurors might infer that the defendant has a propensity to commit crimes and probably committed this crime as charged.

*State v. Werner,* 482 N.W.2d 286, 295 (Amundson, J., concurring in part and dissenting in part) (quoting Patterson, Evidence of Prior Bad Acts: Admissibility Under the Federal Rules, 38 Baylor LRev 331, 332–33 (1986)).

[¶ 53.] In this case, the trial court found the prior acts relevant to show "motive, common plan or scheme, opportunity, absence of mistake or accident, and continuing course of criminal conduct." However, there was never any showing why the prior acts were needed to show a material element of the crime charged. Instead, the court merely listed possible uses creating a "smorgasbord" of choices in the hope that at least one would fit. I have previously expressed my less than enthused opinion of this "smorgasbord" approach to admission of other acts evidence. *See, Werner,* 482 N.W.2d at 296 (Amundson, J., concurring in part and dissenting in part). As stated in *Werner:*

> Particularly to be deplored is what might be called the 'smorgasbord' approach to analysis of other crimes evidence in which the court simply serves up a long list of permissible uses without any attempt to show how any of them are applicable to the case at hand.... What is to be avoided is the mere listing of possible uses in the hope that at least one will seem to the reader to be applicable to the facts of the instant case.

*Id.* (quoting 22 C. Wright & K. Graham, Federal Practice and Procedure, § 5240 at 479 (1978)). Under this guise, forbidden propensity evidence is allowed in.

[¶ 54.] The majority claims motive was relevant to prove intent in the present case. The Majority attempts to distinguish *Moeller,* 1996 SD 60, ¶ 36, 548 N.W.2d at 477, on the basis that forensic evidence was available to establish intent, while, in the present case there was no such forensic evidence. In *Moeller,* the victim, of course, was not available to testify. In the present case, the victims were available to testify and did, in fact, testify. Such testimony serves the purpose the forensic evidence served in *Moeller.* The majority's attempt to distinguish *Moeller* on such a basis is simply a ruse, the result of which is to allow in propensity evidence.

[¶ 55.] In the well-reasoned case of, *United States v. Sumner,* 119 F.3d 658, 661 (8thCir.1997), the Eighth Circuit Court of Appeals held that evidence of prior acts was not admissible to establish motive when intent was not at issue because the defendant denied the criminal act. The court stated:

> Motive, accident, and mistake were not at issue, because if the acts of abuse against [victim] occurred, there can be little doubt regarding [defendant's] motive and the criminality of the acts.... The evidence therefore does no more than show that [defendant] has "a propensity to commit crimes, which Rule 404(b) prohibits."

*Sumner,* 119 F.3d at 661 (citation omitted). In the present case, the defendant denied the acts occurred, thus, intent was not in dispute. To allow the prior acts in as relevant to

establish motive does no more than show a propensity to commit crimes which SDCL 19–12–5 prohibits.

[¶ 56.] The other acts evidence was erroneously admitted and unlike the majority claims, it is far from harmless.  By allowing in these prior acts, the defendant is forced to defend against numerous uncharged acts that deal only with propensity.  There is no question the conduct charged is despicable, sickening and totally unacceptable.  However, when the prior acts do not fit within an exception and serve only to establish propensity, admission of the evidence is erroneous.

[¶ 57.] I also join in the dissent of Justice SABERS.